Robert B. WILLIAMS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1631.

Court of Appeals of Alaska.

May 29, 1987.

Christine Schleuss, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Ronald W. Lorensen, Acting Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

COATS, Judge.

A jury convicted Robert B. Williams of manslaughter, AS 11.41.120(a)(1); failure to remain at the scene of an accident, AS 28.35.050(a); and, failure to give information and render assistance at the scene of an accident, AS 28.35.060(a). It was stipulated at trial that Williams was driving a van when it struck and killed a bicyclist. Pursuant to a search warrant, a sample of Williams' blood was taken and tested. The test result was admitted at trial. Williams challenges that warrant's validity and the admissibility of the test result at trial. He also appeals the trial court's instruction to the jury that intoxication does not negate a finding that the defendant acted "knowingly", a required element of the failure to remain at the scene and failure to render assistance charges. We affirm Williams' conviction.

Williams' van struck the victim at about 1:00 a.m. and a witness who saw the incident immediately discovered the victim's body. The witness went to a nearby store and asked the manager to contact the police. The police located a van matching the witness' description at about 4:00 a.m. and subsequently applied for a search warrant to examine it. A magistrate issued the warrant.

Shortly thereafter, Williams, the van's owner, contacted the police waiting near

his van. Williams acknowledged that the van was his and that he had been in an accident earlier that morning. At about 7:00 a.m., the state requested and received another search warrant to obtain a sample of Williams' blood. Williams' blood was taken at about 9:00 a.m. and revealed a blood alcohol level of .136 percent.[1] The blood test result was admitted at trial and the jury convicted Williams of all of the charges against him.

## I. VALIDITY OF THE SEARCH WARRANT

Williams moved, prior to trial, to suppress the blood test result. Superior Court Judge S.J. Buckalew, Jr., denied the motion. Williams contends that probable cause was not established to justify the search warrant for his blood sample.

■ Probable cause to search exists when reliable information is presented in sufficient detail to persuade a reasonably prudent person that criminal activity or evidence of criminal activity will be found in the place to be searched. *State v. Witwer*, 642 P.2d 828, 831 (Alaska App.1982). The reviewing court gives great deference to the issuing magistrate's probable cause finding and doubtful or marginal cases are usually resolved in favor of upholding the warrant. *Johnson v. State*, 617 P.2d 1117, 1122 (Alaska 1980); *Snyder v. State*, 661 P.2d 638, 646 (Alaska App.1983).

■ Williams asserts that the state's failure to present evidence to Magistrate Williams about exactly when the accident occurred made it impossible for the magistrate to validly determine whether probable cause still existed at the time the warrant was requested. While time is a "critical element" in establishing probable cause, the magistrate and reviewing court can draw reasonable inferences about the recency of the alleged crime from the evidence supporting the warrant request. *Rosa v. State*, 633 P.2d 1027, 1030 and n. 7 (Alaska App.1981); 1 W. LaFave, *Search*

*and Seizure* § 3.7, at 693–95 (1978); *see also Snyder*, 661 P.2d at 647–48.

■ A warrant to search Williams' van was requested and issued at approximately 6:15 a.m. The request to obtain a warrant for a blood sample was made at about 7:00 a.m. Sergeant James Brown of the Anchorage Police Department testified before the magistrate at both proceedings. He told the court that he was called to the accident scene at approximately 1:15 a.m. and that an eyewitness had seen the accident. He also told the court that the deceased's body was still at the accident scene when he arrived. The magistrate was informed that, upon being contacted by the police, Williams had stated that he had arrived home about midnight. Finally, when requesting the warrant to search the van, Brown asked that the warrant be issued to be served immediately because there was fresh and highly perishable hair and fiber evidence on the van. These facts could reasonably have led Magistrate Williams to infer that the accident had occurred around midnight to 1:00 a.m. The magistrate therefore could properly evaluate whether the warrant request was timely.

■ The next contention Williams makes is that, as a matter of law, there could not have been probable cause at 7:00 a.m. to believe a blood test would reveal whether Williams' blood had contained alcohol at the time of the accident, about six hours earlier. An essential aspect of the probable cause finding is establishing that the evidence will be found at the time the search is made. *See Snyder*, 661 P.2d at 646–47; *Rosa*, 633 P.2d at 1030–31 and n. 7.

■ There can be no doubt that evidence of Williams' intoxication at the time of the accident was relevant to resolving the charges brought against him. It was reasonable for the magistrate to conclude that Williams' blood alcohol level several hours after the offense might be probative of his blood alcohol level at the time of the acci-

---

**1.** Alaska Statute 28.35.030(a)(2) creates a rebuttable presumption that a person is intoxicated if his blood alcohol level is .10 percent or more.

dent. In fact, the state offered substantial expert testimony at trial demonstrating that Williams' blood alcohol level at the time of the accident could be extrapolated from the blood test taken later in the morning. We conclude that the magistrate did not err in issuing the search warrant for a sample of Williams' blood.

 Another challenge to the warrant which Williams raises is the state's failure to inform the magistrate that the police had found a partially empty liquor bottle upon entering Williams' house. Even where the state recklessly conceals evidence from the issuing magistrate, we will invalidate the warrant only where the withheld facts would have materially influenced the judge to deny the warrant request. *Cruse v. State*, 584 P.2d 1141, 1146 (Alaska 1978); *Murdock v. State*, 664 P.2d 589, 599 (Alaska App.1983). The presence of the partially empty bottle appears to be more of a neutral fact rather than a clearly exculpatory fact since it supports the thesis that Williams had been drinking the night of the incident as well as the possibility that Williams may have been drinking after the incident. It does not appear to us that evidence that the police had seen the partially empty bottle would have materially influenced the magistrate to deny the warrant request.

## II. ADMISSIBILITY OF THE BLOOD TEST RESULTS AT TRIAL

Superior Court Judge Brian C. Shortell presided at Williams' trial. Williams challenges the admission of the blood test results at trial. He argues that his post-accident drinking and the delay between the accident and the test, rendered the test results unreliable and irrelevant.

2. Williams asserts that AS 28.35.030 supports his argument that the test was too remote in time from the accident and, therefore, should not have been admitted. Alaska Statute 28.35.-030 requires that a blood test be taken within four hours of the alleged offense in order to establish a rebuttable presumption of intoxication. The statute's four hour limitation must be viewed within its context of establishing the presumption. The statute does not establish a conclusion that blood tests become irrelevant if

 The simple fact that Williams may have been drinking after the accident and before the blood test does not by itself render the test results either unreliable or irrelevant. In *Doyle v. State*, 633 P.2d 306 (Alaska App.1981), we addressed the issue of the effect of post-offense drinking on the validity of breathalyzer test results. We pointed out that the weight which the post-offense drinking evidence deserves and the effect of that drinking on the test results are factual questions for the jury. *Id.* at 311. That a particular piece of evidence is contradicted or does not conclusively prove what its proponent suggests does not render it inadmissible. Williams admitted drinking before the accident and other witnesses testified about how much he had drunk. There was, unquestionably, alcohol in Williams' blood when he struck the victim. At trial, the state presented expert testimony that it was possible to calculate from the blood test what Williams' blood alcohol level probably was at the time of the accident. The weight to be given this testimony was a proper matter for the jury. Judge Shortell did not abuse his discretion in admitting this evidence.[2] *Hawley v. State*, 614 P.2d 1349, 1361 (Alaska 1980); *Clark v. State*, 704 P.2d 799, 806 (Alaska App.1985).

## III. THE INTOXICATION INSTRUCTION

The jury was instructed that Williams must have acted knowingly to be guilty of the failure to remain at the scene and failure to render assistance charges. However, over Williams' objection, the jury was also instructed that:

[A] person who is unaware of conduct or a circumstance of which the person would have been aware had that person

taken more than four hours after the alleged violation. Rather, the statute simply reflects the legislative conclusion that a blood test taken within four hours of the alleged infraction is such definitive evidence of intoxication at the time of driving, that the blood test result is sufficient to establish a rebuttable presumption of intoxication. *See Erickson v. Anchorage*, 662 P.2d 963 (Alaska App.1983); *Doyle v. State*, 633 P.2d at 306, 310–11 (Alaska App.1981).

not been intoxicated acts knowingly with respect to that conduct or circumstance.

In *Kimoktoak v. State,* 584 P.2d 25 (Alaska 1978), the supreme court held that, under former AS 11.70.030, the jury could consider evidence of the defendant's intoxication in determining whether the defendant knowingly failed to render assistance. 584 P.2d at 34. The court's decision was based on former AS 11.70.030(a), which provided:

> An act committed by a person while in a state of voluntary intoxication is not less criminal because he was intoxicated. However, when the existence of a particular motive, purpose, or intent is a necessary element to constitute a particular species, or degree of crime, the jury may take into consideration the fact that the defendant was intoxicated at the time in determining the purpose, motive, or intent with which he committed the act.

The court found that knowledge was a mental state "closely related" to motive or purpose and that evidence of intoxication could be considered in evaluating the defendant's knowledge. *Kimoktoak,* 584 P.2d at 34.

Former AS 11.70.030 was repealed, and was replaced in 1980 by AS 11.81.630. Ch. 166, §§ 10, 21, 25, SLA 1978. The current intoxication statute, AS 11.81.630, provides:

> Voluntary intoxication is not a defense to a prosecution for an offense, but evidence that the defendant was intoxicated may be offered whenever it is relevant to negate an element of the offense that requires that the defendant intentionally cause a result.

Alaska Statute 11.81.630 does not necessarily apply to offenses outside of the revised criminal code. Further, one might argue that where the legislature has not specifically addressed the *Kimoktoak* case, we should assume that the legislature did not intend to change the holding in that case, which allows intoxication to be considered

in evaluating the defendant's knowledge for offenses such as failure to render assistance and failure to remain at the scene. In addition, there is the principle of statutory construction that criminal statutes should be strictly construed against the government. 3 C. Sands, *Sutherland Statutory Construction* § 59.03, at 11 (4th ed. 1986); *Andrews v. State,* 707 P.2d 900, 907 (Alaska App.1985), *aff'd,* 723 P.2d 85 (Alaska 1986); *Cassell v. State,* 645 P.2d 219, 222 (Alaska App.1982).

We believe that these are substantial arguments in favor of Williams' position. However, we construe AS 11.81.630 as establishing a general legislative policy to greatly restrict the instances in which a defendant's intoxication can be considered in evaluating his culpable mental state.[3] Specifically, the legislature appears to have established a policy that a defendant may not argue that he did not act knowingly because he was intoxicated. In reaching its decision in *Kimoktoak,* the supreme court relied heavily on the legislative policy as set forth in former AS 11.70.030. Similarly, we believe that in interpreting the current statutes we should place great weight on the legislative policy embodied in AS 11.81.630, which replaced AS 11.70.030. We accordingly conclude that the trial court correctly relied on AS 11.81.630 in construing AS 28.35.050 (failing to remain at the scene of an accident) and AS 28.35.060 (failing to render assistance to an injured person). The trial court did not err in instructing the jurors that they could not consider Williams' intoxication in deciding whether Williams acted knowingly with regard to these offenses.

The conviction is AFFIRMED.

---

**3.** The current version of AS 11.81.630 allows intoxication to negate the culpable mental state in fewer instances than either the Tentative Draft of the Revised Code or the Model Penal Code (from which the Tentative Draft and the Revised Code were derived). *Neitzel v. State,* 655 P.2d 325, 330–31 (Alaska App.1982). In *Neitzel* we concluded that this difference demonstrated "a legislative determination that only intent to cause a result can be negated by evidence of intoxication." *Neitzel,* 655 P.2d at 331.