Ronald Lee WYLIE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2730.

Court of Appeals of Alaska.

Aug. 10, 1990.

Phillip Paul Weidner, Weidner & Associates, Anchorage, for appellant.

Tonja Woelber, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before COATS and SINGLETON,* JJ., and REESE, Superior Court Judge.**

## OPINION

SINGLETON, Judge.

Ronald Lee Wylie was convicted of one count each of leaving the scene of an accident, a misdemeanor, in violation of AS 28.35.050(a),[1] failure to render assistance, a felony, in violation of AS 28.35.060(a), (c),[2]

---

* This case was submitted for decision prior to Judge Singleton's resignation.

** Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. Section 28.35.050 provides in relevant part:
 *Action of operator immediately after accident.* (a) An operator of a vehicle involved in an accident resulting in injury to or death of a person shall immediately stop the vehicle at the scene of the accident or as close to it as possible and return to, and remain at, the

scene until the operator has fulfilled the requirements of AS 28.35.060.

2. AS 28.35.060 provides in relevant part:
 *Duty of operator to give information and render assistance.* (a) The operator of a vehicle involved in an accident resulting in an injury to or death of a person or damage to a vehicle that is driven or attended by a person shall give the operator's name, address, and vehicle license number to the person struck or injured, or the operator or occupant, or the

failure to report an accident, a misdemeanor, in violation of AS 28.35.080(a),[3] and driving while intoxicated, a misdemeanor, in violation of AS 28.35.030.

The charges against Wylie grew out of an incident that occurred at approximately 3:00 a.m. on September 20, 1987. Wylie and his wife, Theresa, were driving home after an evening of drinking and dancing in a number of Kenai Peninsula nightclubs. Theresa jumped or fell from the moving vehicle, hung on briefly, and then fell striking her head on the pavement. She died almost instantly. Wylie did not stop. He drove home and called his mother who rushed to the scene, discovered Theresa's body, and summoned help. Earlier, a passerby saw Theresa's body by the side of the road and called the police who arrived shortly after Wylie's mother. At trial, Wylie conceded that he did not stop, render aid, or notify the authorities. He argued that he had no duty to do so because Theresa intentionally jumped out of his car and consequently, neither she nor he was involved in an accident. Wylie was convicted by a jury and he appeals. We affirm Wylie's conviction but vacate his sentence and remand for resentencing.

## DISCUSSION

Wylie first argues that the trial court erred in refusing to grant his pretrial motion to change venue. He points out that he, his wife, and their families were well-known in the Kenai/Soldotna area where the incident occurred. Along with his motion, he introduced copies of newspaper clippings detailing the police investigation of the incident which mentioned that Wylie and Theresa had been having marital problems, that she had sued for divorce and had obtained a restraining order against him. The articles also indicated that Theresa accused Wylie of having beaten her and indicated that the police considered Theresa's death "suspicious." The newspaper also carried an article entitled "Domestic Violence—A Dark Path to Death" which included a discussion of the Wylies in a chronicle of local cases of domestic violence and indicated that Wylie had a history of domestic violence against a former wife, Lois, and that Theresa had accused him of severely beating her on two occasions. The article went on to detail Theresa's experience with the counselors at "The Women's Resource and Crisis Center" where Theresa spent some time allegedly as a result of domestic discord.

In addition, Wylie offered an affidavit from Robert M. Henderson, a former police officer, who was working as a private investigator. Henderson indicated that he had spoken with numerous people in the Kenai/Soldotna area who had read about the Wylie case in the local newspaper and believed that Wylie had intentionally shoved his wife out of the moving car. In his motion below, Wylie relied on AS 22.10.-030, AS 22.10.040 and Alaska Criminal Rule 18(g) for the proposition that venue should have been changed prior to jury selection because there was reason to believe that an impartial trial could not be held.

person attending, and the vehicle collided with and shall render to any person injured reasonable assistance, including making of arrangements for attendance upon the person by a physician and transportation, in a manner that will not cause further injury, to a hospital for medical treatment if it is apparent that treatment is desirable. Under no circumstances is the giving of assistance or other compliance with the provisions of this paragraph evidence of the liability of an operator for the accident.

. . . .

(c) A person who fails to comply with a requirement of this section regarding assisting an injured person is, upon conviction, punishable by imprisonment for not more than 10 years, or by a fine of not more than $10,000, or by both. This provision does not apply to a person incapacitated by the accident to the extent that the person is physically incapable of complying with the requirement.

**3.** AS 28.35.080 provides in relevant part:

*Immediate notice of accident.* (a) The driver of a vehicle involved in an accident, resulting in bodily injury to or death of a person or total property damage to an apparent extent of $500 or more shall immediately by the quickest means of communication, give notice of the accident to the local police department if the accident occurs within a municipality, otherwise to the Department of Public Safety.

Generally, criminal trials should be held where the alleged offense occurred. *See Alvarado v. State,* 486 P.2d 891, 902 (Alaska 1971). Nevertheless, the trial court has discretion to change venue where necessary to ensure a fair trial. *Oxereok v. State,* 611 P.2d 913, 919 (Alaska 1980); *Mallott v. State,* 608 P.2d 737, 746 (Alaska 1980); *Brown v. State,* 601 P.2d 221, 229–30 (Alaska 1979); *Nylund v. State,* 716 P.2d 387, 388 (Alaska App.1986); *Nickolai v. State,* 708 P.2d 1292, 1293 (Alaska App. 1985); *Chase v. State,* 678 P.2d 1347, 1350 (Alaska App.1984). The general rule is that jury selection should be commenced in the venue of the crime and then moved only if voir dire reveals that an impartial jury cannot be obtained. Nevertheless, there may be circumstances in which the community where the incident occurred is so small, the parties so well-known, and pretrial publicity so pervasive that venue should be changed even though prospective jurors on voir dire assure the court that they can be fair. *Nickolai,* 708 P.2d at 1293.

We have carefully reviewed the voir dire examination in this case. We have also considered Wylie's arguments regarding the small size of the relevant community and the nature of the pretrial publicity. We note that only forty-five prospective jurors were questioned before twelve jurors and three alternates were chosen and that only six panelists knew Wylie or Theresa. It is noteworthy that defense counsel did not ask for additional peremptory challenges. It is also noteworthy that Wylie never renewed his motion to change venue after the jury and alternates had been selected. The supreme court has characterized a failure to renew a motion

to change venue after voir dire as an "apparently deliberate waiver." *Mallott,* 608 P.2d at 748. We are satisfied that Superior Court Judge Beverly W. Cutler, who considered Wylie's pretrial motion, did not abuse her discretion in denying a change of venue prior to the voir dire examination.[4]

Wylie next argues that Judge Cutler erred in denying his motion to dismiss the grand jury indictment for lack of evidence and that Superior Court Judge Victor D. Carlson, the trial judge, compounded this error by denying Wylie's motion for judgment of acquittal. In reviewing the denial of a motion to dismiss an indictment, the appellate court views the evidence in the light most favorable to the state to determine whether the evidence presented to the grand jury, if unexplained or uncontradicted, would warrant conviction. Alaska R.Crim.P. 6(q). *See Mudge v. State,* 760 P.2d 1046, 1049 (Alaska App.1988).

> In considering a motion for a judgment of acquittal, both at trial and on appeal, the court 'must take the view of the evidence and the inferences arising therefrom most favorable to the state. If ... fair-minded men in the exercise of reasonable judgment could differ on the question of whether guilt has been established beyond a reasonable doubt,' the motion must be denied.

*Hentzner v. State,* 613 P.2d 821, 823 (Alaska 1980) (quoting *Gray v. State,* 463 P.2d 897, 905 (Alaska 1970)).

Wylie argues that Theresa's death was not an accident because she intentionally and voluntarily jumped from his vehicle. He argues that there is no evidence to the contrary and that as a matter of law he could not be convicted of the offenses charged.

> Absent genuinely disputed factual issues the trial court has broad discretion to dispose of issues raised in pretrial motions without conducting an evidentiary hearing. *Davis v. State,* 766 P.2d 41, 44–45 (Alaska App.1988). Given the strong presumption that motions for change of venue should not be decided until voir dire has at least been attempted, we hold that Judge Cutler did not abuse her discretion in denying Wylie's pretrial motion without prejudice and leaving the issue to be reconsidered after voir dire examination. *See Mallott,* 608 P.2d at 747.

---

**4.** Wylie also argues that Judge Cutler abused her discretion by not holding an evidentiary hearing on the motion to change venue. He notes that a hearing was requested and that an offer of proof was made as to additional witnesses who could have testified regarding potential prejudice to Wylie from holding his trial in the Kenai/Soldotna area. Wylie points out that the prosecutor filed a legal memorandum in opposition to his motion but did not file affidavits contradicting his assertions of fact.

We are thus faced with the interpretation of the applicable statutes and specifically with a determination of the meaning of the phrase "a vehicle involved in an accident" which occurs in all three statutes. In order to do so, we must determine legislative intent regarding the scope of these statutes. Alaska no longer adheres to a "plain meaning rule." *See Sonneman v. Knight*, 790 P.2d 702, 707 (Alaska 1990); *Ward v. State*, 758 P.2d 87, 89–90 n. 5 (Alaska 1988); *Anchorage v. Sisters of Providence in Washington, Inc.*, 628 P.2d 22, 27 n. 6 (Alaska 1981); *State Dept. of Nat. Resources v. City of Haines*, 627 P.2d 1047, 1049 n. 6 (Alaska 1981). Nevertheless, " '[w]here a statute's meaning appears clear and unambiguous, . . . the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent.' " *Ward*, 758 P.2d at 89–90 n. 5 (quoting *University of Alaska v. Geistauts*, 666 P.2d 424, 428 n. 5 (Alaska 1983)). The word "accident" and the phrase "a vehicle involved in an accident" are not specifically defined in the statutes. Consequently, they must be construed according to their common and approved usage. AS 01.10.040. No Alaskan appellate decision defines the terms "accident" or "involved" in comparable statutes. In such cases, "[g]enerally, we look to a dictionary to determine common usage." *Walker v. State*, 742 P.2d 790, 791 (Alaska App.1987). "Accident" has been defined as "an event or condition occurring by chance or arising from unknown or remote causes . . . an unforeseen, unplanned event or condition . . ." or "a usually sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." *Webster's Third New International Dictionary of the English Language* (Unabridged 1966). "Involved" means "to relate closely." *Id.* at 1191.

In interpreting a statute, it is also important to consider the purposes leading the legislature to enact the statute. We agree with the Supreme Court of Iowa that "hit and run" statutes, like the ones Wylie violated, have two general purposes: first, to ensure that motorists involved in accidents causing personal injury or property damage are prevented from evading liability, civil or criminal, by escaping before their identity can be established and, second, to ensure that injured persons are protected from distress or danger from additional mutilation and exposure for want of proper treatment. *State v. Sebben*, 185 N.W.2d 771, 774 (Iowa 1971). Criminal statutes must be strictly construed in favor of criminal defendants. *State v. Andrews*, 707 P.2d 900, 907 (Alaska App.1985), *aff'd*, 723 P.2d 85 (Alaska 1986). Strict construction does not, however, imply an unreasonable construction of a statutory scheme. *Belarde v. Anchorage*, 634 P.2d 567, 568 (Alaska App.1981). Essentially, we must give the statutes " 'a reasonable or commonsense construction, consonant with the objectives of the legislature.' " *Id.* (quoting C. Sands, Sutherland Statutory Construction § 59.06, at 18–19 (4th ed. 1974)).

Wylie cites *Behrens v. State*, 140 Neb. 671, 1 N.W.2d 289 (1941), for the proposition that no accident has occurred when a passenger voluntarily jumps from a moving vehicle. *Behrens* does not specifically hold this, for in *Behrens* a majority of the court assumed that the passenger was the victim of an accident. *Id.* 1 N.W.2d at 293. The court actually held that the phrase "any vehicle involved in an accident" established that the operator's duties did not come into operation unless the vehicle being operated collides with a person or property. *Id.* at 292–93. Alaska's statutes are similar to Nebraska's.

Two states, California and Iowa, have reached a contrary conclusion. *See People v. Green*, 96 Cal.App.2d 283, 215 P.2d 127, 129–30 (1950); *State v. Carpenter*, 334 N.W.2d 137, 140 (Iowa 1983). *See also Behrens*, 1 N.W.2d 295 (Chappell, J., dissenting). We agree with the Iowa and California courts that Wylie's construction of the statute would defeat its essential purposes. Clearly, the legislature intended to protect those injured by a motor vehicle and facilitate a determination of civil and criminal liability. It is clear that Theresa's injuries were at the very least aggravated

by the fact that she fell or jumped from a moving vehicle. If Theresa had not been in a moving vehicle just prior to her death, it is unlikely that she would have suffered the injuries she did. Consequently, there is a causal connection between Wylie's driving of his vehicle and Theresa's injuries and ultimate death.

In context then, an "accident" is any incident in which someone suffers injury or death; and, "a vehicle [is] involved in an accident" if there is a causal nexus between the vehicle and the injury or death. Therefore, in accordance with the Iowa and California courts, we find that when a passenger jumps from a moving vehicle and as a result suffers injury or death, the motorist is obligated to stop and render assistance and notify the proper authorities. In our view, this is true whether or not the operator was warned of the passenger's desire to leave the vehicle. In this way, liability will be more readily determined and further injury prevented.

We, therefore, decline to adopt the reasoning of the majority of the Nebraska Supreme Court in *Behrens*. In our view, requiring drivers of vehicles from which passengers jump and are killed or injured, to stop, render aid, and summon help, best serves the legislative purpose in enacting these statutes. *Belarde*, 634 P.2d at 568. Under our interpretation of the statute, the driver of a vehicle is involved in an accident if the driver's passenger with or without advance warning jumps or falls from the vehicle and is injured or dies. Therefore,

Judge Cutler did not err in denying Wylie's motion to dismiss the indictment[5] and Judge Carlson did not err in denying his motion for judgment of acquittal.[6]

Wylie next argues that the trial court erred in permitting the state to introduce irrelevant and prejudicial evidence in violation of Alaska Evidence Rules 401 and 403. He notes that he conceded in opening statement that he had not complied with any of the statutes under which he was charged. His sole defense was that Theresa had not died as a result of an "accident" in which his vehicle was "involved." Over objection, the state was permitted to introduce a high school graduation photograph of Theresa, pavement chips, fabric fiber and part of her clothing, videotapes of Wylie's interrogation and of the accident scene, and the "gory" details of Theresa's demise. In Wylie's view, all of this evidence was cumulative of his effective stipulation to the elements of the offense.

Wylie did not offer to plead guilty and reserve his interpretation of the statutes as a question of law for appeal. *See Oveson v. Anchorage*, 574 P.2d 801, 803 n. 4 (Alaska 1978); *Cooksey v. State*, 524 P.2d 1251, 1256–57 (Alaska 1974). In the state's view, Wylie did not concede his guilt but argued that as a matter of fact no "accident" occurred and that Theresa had committed suicide, therefore evidence about the manner of Theresa's death was highly relevant to refute the claim that she had committed suicide. In essence, the state's evidence purported to show circumstantially that

---

**5.** Our conclusion finds additional support in those decisions holding that a person who intentionally uses his or her vehicle to injure or kill another is "involved in an accident" and thereby required to comply with the statutory duties. *See People v. Laursen*, 175 Cal.App.3d Supp. 1, 222 Cal.Rptr. 122 (1985); *State v. Parker*, 299 Or. 534, 704 P.2d 1144 (1985). *Contra State v. Liuafi*, 1 Haw.App. 625, 623 P.2d 1271 (1981).

**6.** On appeal, Wylie argues that Theresa committed suicide because she intentionally and voluntarily jumped to her death. The record does not support this characterization. There was no evidence that Theresa was despondent or suicidal. Wylie was the only witness to Theresa's death. He did not testify at trial. He told Theresa's father and investigating officers that he and Theresa had an argument in the vehicle.

Theresa opened the door and said she was getting out. He told her not to and to close the door, and the next instant she was gone, from which he inferred that she had jumped. This evidence is quite consistent with Theresa opening the door in order to force her husband to stop the car so she could get out. It is also possible that having opened the door, she fell out. Finally, it is possible that she was so angry that she jumped out, not expecting to suffer serious injury. Wylie told the investigating officer that he was reasonably sure she was seriously injured. In fact, he mistakenly believed that he may have run over her. Any of these results would constitute an accident requiring Wylie to stop, render aid, and inform the authorities. But there is no evidence that Theresa intended to kill herself.

Theresa had left the vehicle feet first and may have hung on briefly while she was dragged along the pavement. According to the state, this evidence refuted the defense theory of the case.

In our view, the dispute between the parties regarding the meaning of the phrase "a vehicle involved in an accident" was a question of law not fact. We have resolved that issue in the state's favor on appeal. Under our interpretation of the statute, a motorist is obligated to stop and render aid if a passenger with or without advance warning jumps from the moving vehicle and is killed or injured, whether the passenger intends to commit suicide or not. Consequently, the state's evidence regarding Wylie's concessions was unnecessary to establish a *prima facie* case or rebut an available defense. On the other hand, this issue had not been resolved at the time the case was tried. Under the circumstances, the trial court did not err in concluding that the circumstantial and expert evidence regarding the manner in which Theresa died was relevant and that its relevance outweighed any prejudice to Wylie. We are less certain regarding the admission of Theresa's graduation photograph. In any event, given our interpretation of the statute and Wylie's concessions at trial, any error is harmless since Wylie's concessions established his guilt of failing to stop, render aid, and notify the authorities. *See* Alaska R.Crim.P. 47(a); *Love v. State,* 457 P.2d 622, 629–32 (Alaska 1969).

We recognize that Wylie was also convicted of driving while intoxicated and we must separately consider the possibility that the introduction of this evidence prejudiced his defense to that charge. Again, Wylie did not testify. Two witnesses testified that they observed Wylie shortly before Theresa's death and that he was intoxicated. One witness testified that she was the waitress on duty and served Wylie and Theresa four drinks a piece. This witness had no opinion as to whether Wylie was intoxicated. In his statement to the investigating officer, Wylie conceded that he was intoxicated and impaired at the time Theresa jumped from his car. In response to questions from the officer regarding any drinking in between the time Theresa died and the officers contacted Wylie, Wylie initially said that he had drunk nothing and then indicated he may have drunk from a bottle of tequila. Chemical tests of Wylie's blood were later obtained at 7:00 a.m. and indicated a blood alcohol level .122. An expert testified that Wylie's blood alcohol level would have been .182 at 3:00 a.m. unless he drank after that time. Considering all of this evidence, we are satisfied that any error in introducing evidence surrounding the circumstances of Theresa's death did not prejudice Wylie's defense to the charge of driving while intoxicated.[7]

Wylie next argues that the trial court erred in instructing the jury in a number of particulars. He objected to Instruction No. 33 which stated:

As used in the statutes and these instructions, the term "involved in an accident" includes all vehicular highway incidents involving a vehicle where there is either intentional or unintentional conduct by the driver or any other person and where personal injury or death occurs. It does not require a collision between the operator's vehicle and another vehicle or person.

Wylie argues that this definition of accident denies him the right to a fair trial and due process of law. He seems to contend that whether liability for failure to stop and render aid under the statutes requires a collision between the operator's vehicle and another vehicle or person was a question of fact for the jury.

---

7. Wylie also argues that the trial court erred in introducing evidence that he and Theresa were having domestic problems. The evidence consisted of a single question to Theresa's father and a part of Wylie's statement to the police in which he conceded domestic difficulty. We agree with Wylie that this evidence was irrelevant. We are satisfied, however, that given his concessions and our interpretation of the statute, that Wylie was not prejudiced in defending against the charges of failure to stop, render aid, and notify the police. The charge of driving while intoxicated presents a closer issue. But given the limited evidence of domestic problems and the strength of the evidence of intoxication, we find that any error was harmless.

We disagree. As we indicated earlier, we are persuaded by the California and Iowa courts that a collision is not a prerequisite to an accident for purposes of the stop and render assistance statutes. Nevertheless, Instruction 33 would not be appropriate in every case involving a hit and run because it does not unambiguously spell out the requirement that there must be a causal connection between the driving of a vehicle, injury to someone, and the driver's duty to stop, render aid, and inform the police. Here it is undisputed that Theresa was a passenger in Wylie's vehicle and that she left it while it was moving under circumstances in which serious injuries were virtually certain. Consequently, a causal nexus is clear. We find that giving Instruction 33 was not prejudicial error in this case.[8]

**8.** At trial, Wylie only objected to Instruction No. 33. On appeal for the first time, he challenges a number of other instructions. In the absence of an objection, he must establish "plain error" in order to prevail. Alaska R.Crim.P. 30(a); Alaska R.Crim.P. 47(b). Plain error in an instruction is one that is both obvious and substantially prejudicial. *Carman v. State,* 658 P.2d 131, 135 (Alaska App.1983). The other instructions to which Wylie objects do not reach the level of plain error.

Wylie argues that the trial court erred in giving Instruction No. 23. The jury was instructed that reckless and negligent driving were lesser-included offenses of driving while intoxicated. This is a correct statement of the law. *See Comeau v. State,* 758 P.2d 108, 119 (Alaska App.1988). Wylie seems to argue that the jury might mistakenly have concluded that reckless and negligent driving were lesser-included offenses of failing to stop and render aid. A plain reading of the instructions precludes such an interpretation. Since the jury convicted Wylie of failing to stop, render aid and notify the authorities, it is difficult to see how Wylie would have been prejudiced if the jury were mistaken on this issue.

Wylie objects to Instruction No. 29 which indicates that the *mens rea* for failing to stop and render aid is "knowing conduct" and then tracks the statutory definition of knowing conduct to provide that where a person would have known of a fact if he had not been intoxicated, the jury should find knowledge whether or not he was intoxicated. *See* AS 11.81.900(a)(2). Wylie argues that this is an incorrect statement of law. He cites *Kimoktoak v. State,* 584 P.2d 25, 33–34 (Alaska 1978), which held that a jury must consider the state of a person's intoxication in determining whether he had the requisite knowledge to violate the statutory duty to stop and render aid. The state correctly points out that *Kimoktoak* has been superseded by intervening statutory changes. *See Williams v. State,* 737 P.2d 360, 363–64 (Alaska App.1987). Wylie asks us to reconsider *Williams.* We decline to do so. Wylie argues for the first time on appeal that the legislature cannot constitutionally preclude consideration of intoxication in determining knowledge. Wylie is incorrect. *See Abruska v. State,* 705 P.2d 1261, 1265–66 (Alaska App.1985). The trial court did not commit plain error in giving Instruction No. 29.

Wylie objects to Instruction No. 32 which told the jury that as to the counts charging failing to stop and render aid "it is not a defense that the victim died immediately and that no amount of aid or assistance would have saved her life." Wylie argues that it is a jury question whether a defendant exercised reasonable care to provide assistance. *See Sebben,* 185 N.W.2d at 775–76. We agree with the Iowa court that where a motorist is involved in a single car accident, and a passenger is rendered unconscious or instantly killed,

> [a] duty is imposed on the offending driver to render the persons [injured or killed] assistance which would reasonably appear to him, as an ordinary person, at the time to be necessary. Ordinarily, it will be for the trier of fact to say whether the driver has fulfilled this duty.

*Id.* at 776.

The reasonableness of a motorist's actions after stopping to render aid is a jury question. It is undisputed that Wylie did not stop and render any aid at all and did not contact the authorities. He drove home, called his mother telling her that Theresa had jumped out of his car, and then passed out or fell asleep. Under the circumstances, this instruction was not plain error. We are satisfied that it would violate the legislature's intent if we were to hold that Theresa's fortuitous death even if instantaneous, absolved Wylie completely of the duty to stop, render aid and notify the authorities. It is unnecessary for us to decide which instructions would have been appropriate if Wylie had stopped, determined that Theresa was dead, notified the authorities and then left the scene.

Wylie argues that the trial court erred in giving Instruction No. 36 which instructed the jury that it should not consider penalty or punishment in reaching its verdict. This instruction was not plain error. *See Martin v. State,* 664 P.2d 612, 619 (Alaska App.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 234 (1984).

Wylie objects to Instruction No. 39, which provided:

> You are not bound to decide in conformity with the testimony of a greater number of witnesses, which does not convince you, as against the testimony of a lesser number of witnesses which appeals to your mind with more convincing force. Thus, you are not to decide an issue by the simple process of counting the number of witnesses who have testified on the opposing sides. The final test

In our view, the instruction constituted an attempted construction and interpretation of the statutes rather than a directed verdict on an element of the respective offenses. *See St. John v. State,* 715 P.2d 1205, 1209–10 (Alaska App.1986) (discussing interplay between harmless error rule and instruction which directs verdicts on an element of an offense).

Wylie argues that the trial court erred in failing to give four instructions which he requested.

1. The word "accident," requiring the operator of a vehicle to stop immediately in case of an accident, contemplates any situation occurring on the highway wherein he so operates his automobile as to cause injury to the property or person of another using the same highway.

2. The term accident is defined as meaning a fortuitous circumstance, event, or happening which under the circumstances is unusual and unexpected by the person to whom it happens.

3. If you find that the decedent voluntarily left the vehicle and was not struck or run over by the vehicle after leaving it, you must find the defendant not guilty of Counts I, II, and IV of the indictment.

4. The statute in this state requiring the operator of a vehicle involved in an accident to stop, give information, render assistance, and make a report to proper authorities, are commonly referred to as "hit and run" statutes. Such statutes must be strictly construed in favor of the defendant and may not be enlarged by construction or extended by inference to conclude acts not within its terms.

■ Wylie's proposed Instruction No. 4 relates to matters of law, not matters of fact. The trial court did not err in refusing to give the jury this instruction. Wylie's proposed Instructions 1, 2, and 3 are either incomplete, conflict with the interpretation of the statute we reached earlier in this opinion, or involve matters covered by other instructions which were given. The trial court did not commit prejudicial error in declining to give these instructions.

■ Wylie contends that Superior Court Judge Charles K. Cranston's secretary was a relative of the decedent and "instrumental in obtaining the grand jury indictment against Wylie." Superior Court Judge James A. Hanson apparently recused himself in this case because he knew

is not the relative number of witnesses, but the relative convincing power of the evidence. This instruction is Alaska Pattern Jury Instruction, Criminal, No. 1.07. Wylie claims this instruction invites the jury to find guilt by a preponderance of the evidence and therefore lowers the state's burden of proof. All of the instructions must be read and considered together. The jury was repeatedly instructed that the state had to prove Wylie's guilt beyond a reasonable doubt. There is no plain error.

Wylie next objects to Instruction No. 41, which told the jury:

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reach an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction regarding the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

The language in this instruction was expressly approved in *Fields v. State,* 487 P.2d 831, 842–43 n. 37 (Alaska 1971). *See* Alaska Pattern Jury Instructions, Criminal, No. 1.57. Wylie argues that it should only have been given in the event of a hung jury and not as part of the packet of jury instructions presented to the jury at the end of the case. The trial court acted in accordance with the ABA standard from which the instruction was taken. *See Fields,* 487 P.2d at 843 n. 37. The use note accompanying the Pattern Jury Instruction indicates that the trial court may give the instruction at the close of the case with the other instructions or wait and give it, if the jury expresses an inability to agree. We find no plain error.

the parties. Judge Cranston was peremptorily challenged by Wylie, and Judge Carlson was assigned to try the case. Wylie argues that there was an appearance of impropriety because Judge Carlson was seen by someone talking to Judge Cranston's secretary while the case was in progress. He did not, however, bring this to the attention of the trial court or challenge Judge Carlson for cause. Wylie has not shown how he was prejudiced by any conversations between Judge Cranston's secretary and Judge Carlson. We find no plain error.

## SENTENCING ISSUES

 Wylie contends that a separate conviction for failure to stop, AS 28.35.050, failure to assist, AS 28.35.060, and failure to contact the authorities, AS 28.35.080, violate double jeopardy because the felony offense of failure to assist is a lesser-included offense of the misdemeanor failure to stop and failure to contact the authorities. The Supreme Court of Alaska has characterized these statutes as an interlocking scheme, not greater or lesser offenses. Convictions for both offenses would not appear to violate double jeopardy. *See Drahosh v. State*, 442 P.2d 44, 49 (Alaska 1968) (holding that leaving the scene and failing to render assistance are separate and distinct offenses). In *Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679–80, 74 L.Ed.2d 535 (1983), the Supreme Court held that if the legislature authorizes cumulative punishment under two statutes, regardless of whether they proscribed the same conduct, double jeopardy is not violated. The *Drahosh* holding that failure to stop and failure to assist are separate and distinct offenses implicitly recognizes the legislative intent to permit cumulative punishment. We find no violation of double jeopardy in permitting multiple convictions.

 Wylie next argues that his sentence is excessive. He points out that he is a youthful first felony offender with a good employment record and community support. The trial court imposed a composite sentence, including concurrent segments, of ten years with four years suspended. In *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981), we held that ordinarily a first felony offender convicted of an offense should receive a more favorable sentence than the presumptive term for a second felony offender. Later, in *Brezenoff v. State*, 658 P.2d 1359, 1362 (Alaska App.1983), we held that the presumptive term for a second felony offender constitutes a ceiling on an appropriate sentence for a first felony offender in the absence of aggravating factors, or the kind of extraordinary circumstances that would warrant referral of a second felony offender to a three-judge panel for sentencing. AS 12.-55.155–.175. Before a second or third felony offender can receive a sentence in excess of the appropriate presumptive term, the state must give notice of aggravating factors and present clear and convincing evidence to establish them. AS 12.55.-155(f).

In evaluating the *Austin* rule in the past, we have not been as strict in reviewing aggravating factors as in cases where presumptive sentencing applies. On reflection, we are satisfied that unless a first felony offender is given advance notice of proposed aggravating factors, there is a substantial risk that the *Austin* rule will be undermined. In such a case, a first felony offender may in fact receive a more serious sentence than the same person with the same background committing the same offense would receive as a second felony offender. Henceforth, we will require prior notice to the defendant before approving deviations from the *Austin* rule.[9]

---

**9.** If the trial court wishes to exceed the *Austin* rule in a case where no aggravating factors have occurred to the prosecutor, it should notify the defendant of those factors which it considers important and permit the defendant to be heard regarding their applicability, if necessary granting the defendant a continuance in order to present relevant evidence. *See Hartley v. State*, 653 P.2d 1052, 1055–56 (Alaska App.1982) (if trial court relies *sua sponte* on aggravating factors not presented by the prosecutor, it must give parties notice and an opportunity to be heard).

Failure to render assistance is not a classified offense to which presumptive sentencing applies. Nevertheless, we have recognized that the legislature has prescribed a ten-year maximum term, and that the offense is therefore analogous to a class B felony. *See Smith v. State,* 739 P.2d 1306, 1308 (Alaska App.1987). In *Smith* we concluded that the *Austin* rule should apply and a first felony offender convicted of failure to render assistance should not receive a sentence in excess of the four-year presumptive term for a second felony offender convicted of a class B felony in the absence of aggravating factors or extraordinary circumstances. *Id.* at 1309–10. We adhere to that view in this case.

Judge Carlson inferentially found five statutory aggravators which were presented by the state in argument. He found that:

1. A person sustained physical injury as a direct result of Wylie's conduct. AS 12.55.155(c)(1).

2. Wylie used a dangerous instrument (motor vehicle) in furtherance of the offense. AS 12.55.155(c)(4).

3. Wylie's prior criminal history includes conduct involving aggravated or repeated instances of assaultive behavior (conviction of a fourth-degree assault against a former wife and documentary evidence of beatings and other assaults against Theresa). AS 12.55.155(c)(8).

4. The conduct was among the most serious within the definition of the offense. AS 12.55.155(c)(10).

5. The crime was committed against a spouse (even though the crime was not technically included in AS 11.41). AS 12.55.155(c)(18).

Judge Carlson's analysis of Wylie's sentence is troublesome. A factor which is an element of an offense cannot be used to aggravate the sentence for that offense. AS 12.55.155(e). The fact that a person sustains physical injury and the fact that an automobile is involved would appear to be elements of the offenses of failing to stop, render aid, and contact the authorities. AS 28.35.050–.060; AS 28.35.080. Consequently, the trial court should reconsider the appropriateness of these factors if it plans to aggravate Wylie's sentence.[10]

In summary, the trial court aggravated Wylie's sentence on the basis of aggravating factors without giving advance notice. Some of these aggravating factors were arguably applicable while others were not. The sentence was well in excess of the *Austin* rule and the trial court gave no clear indication of why it viewed Wylie's conduct as most serious. Since we cannot be certain that the trial court would have imposed the same sentence had it considered only appropriate aggravating factors, it is necessary for us to reverse and remand for resentencing.[11]

**10.** Under our interpretation of the statute, a motorist whose passenger jumps from the vehicle without any advance warning is nevertheless under a duty to stop, render aid and notify the authorities of any injury or death. There was evidence from which a trier of fact could have found that Wylie could have lessened or prevented Theresa's injuries if he had immediately stopped or slowed the vehicle when he first learned of Theresa's desire to get out. If Judge Carlson is relying on this evidence to aggravate Wylie's sentence, he should refer to it expressly.

**11.** In addition to sentencing Wylie to a composite six-year period of imprisonment, the trial court suspended four years and placed Wylie on probation for a term ending eleven years from the date he begins to serve his sentence. *Cf.* AS 12.55.090(c) (placing a five-year limitation on probation). Wylie has not challenged the eleven-year period in this appeal and we express no

opinion regarding it. One of the conditions of the suspension of the four years was that Wylie not operate a motor vehicle. The court indicated that after Wylie was on probation for a period of time he could apply to the court for reinstatement of his license.

Wylie argues that AS 28.15.181(a)(3) which provides for the immediate revocation of a driver's license where a person is convicted of "failure to stop and give aid as required by law when a motor vehicle accident results in the death or personal injury of another" limits the period of revocation to thirty days and, where conviction is for driving while intoxicated, AS 28.15.181(a)(5), the period of revocation is limited to ninety days. Wylie has misread the statute. AS 28.15.181(b) & (c). The periods of revocation he relies upon are minimums, not maximums. Thus, even if AS 28.15.181 governs revocations of licenses as conditions of probation, an issue we do not reach, the trial court's

*See Deal v. State,* 587 P.2d 740, 741 (Alaska 1978); *Nashoalook v. State,* 744 P.2d 420, 422–23 (Alaska App.1987).

The judgment of the superior court is AFFIRMED in part and REVERSED in part and this case is REMANDED for re-sentencing.

BRYNER, C.J., not participating.

order in this case would not violate the statute. Alaska Statute 12.55.080 allows conditions of probation which are reasonably related to the rehabilitation of the offender and the protection of the public and not unduly restrictive of liberty. *Edison v. State,* 709 P.2d 510, 511–12 (Alaska App.1985). Wylie has seven prior driving offenses. He has now been convicted of driving while intoxicated and failing to stop and render aid in the event of a fatality. Under the circumstances, a four-year license revocation, subject to reconsideration on application by Wylie after he has been released from prison and begun his rehabilitation, is not clearly mistaken.

The state argues that we have no authority to decide license revocations as part of a sentence appeal. *See Wharton v. State,* 590 P.2d 427 (Alaska 1979) (appellate court's authority to de-cide sentence appeals is circumscribed by statute and by appellate rule). The state also contends Alaska Appellate Rule 215(a) authorizes the court of appeals to consider claims of excessiveness only as to sentences of imprisonment. Alaska statutes likewise confine sentence appeal authority to sentences of imprisonment. AS 12.55.120. In the state's view, since the license revocation was lawfully imposed and within statutory limits, this court cannot rule on the excessiveness of the period of license revocation. We are satisfied that we have the authority to consider the appropriateness of license revocations as conditions of probation as part of our authority to consider the reasonableness of conditions of probation. *See Kennedy v. State,* 657 P.2d 859 (Alaska App.1983) (upholding three-year license revocation).