**Myron ACE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 7077.**

Court of Appeals of Alaska.

Nov. 25, 1983.

John M. Murtagh, Anchorage, for appellant.

Peter A. Michalski and Cynthia Hora, Asst. Attys. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Myron Ace was convicted, following a jury trial, of one count of theft in the third degree, AS 11.46.140, and one count of theft in the second degree, AS 11.46.130. Judge S.J. Buckalew sentenced Ace to six months suspended on theft in the third degree and to three years with two suspended on theft in the second degree. The sentences were concurrent. Ace appeals his convictions and his sentence on theft in the second degree to this court. We reverse Ace's convictions because the trial court did not give proper instructions on the theft with which Ace was charged, theft by receiving, AS 11.46.190. Our disposition makes it unnecessary for us to reach Ace's sentence appeal argument.

Ross Shorey, a convicted burglar, named Ace as a person to whom he had sold stolen property. Based on Shorey's statements, the police obtained a warrant to search Ace's house, and recovered stolen property from two burglaries committed by Shorey. At trial the state contended that Ace bought the property from Shorey for very low prices and had been told by Shorey that the property was "hot." Ace admitted that he strongly suspected that the property which he purchased from Storey was stolen, but stated that he had an arrangement with a police officer, Officer Parmeter, to turn stolen property over to the police. He stated that he was going to call Officer Parmeter to have him determine if the property was, in fact, stolen. He stated that his girl friend, Laurie Parrett, was supposed to call Officer Parmeter. Officer Parmeter testified that on prior occasions Ace had received stolen property and turned it over to the police. Parmeter stated that Ace and he had a "deal" that if Ace purchased stolen goods, he would call Parmeter and Parmeter would determine the status of the property. The police would then pay Ace for the goods if they were found to be stolen; if they were not stolen, Ace would keep the property. Officer Parmeter testified that neither Ace nor Parrett called him before Ace's house was searched nor did Ace or Parrett leave any message for Parmeter when the officer was out of the police station. Thus Ace's defense was that although when he received the property he suspected it was stolen, he did not intend to keep the property once it was verified by the police stolen. The court refused to give Ace's proposed instruction on this defense but allowed him to argue his theory of his case to the jury.

The court gave the following instruction:

A person commits the crime of theft in the second degree if he buys, receives, retains, conceals, or disposes of stolen property with reckless disregard that the property was stolen and the value of said property is $500 or more.

In order to establish the crime of theft in the second degree, it is necessary for the State to prove beyond a reasonable doubt the following:

First, that the event in question occurred at or near Anchorage and on or about December 10, 1981;

Second, that Myron L. Ace bought, received, concealed, or disposed of stolen property;

Third, that the defendant recklessly disregarded that the property was stolen; and

Fourth, the value of the property was $500 or more.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you shall find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you shall find the defendant not guilty.

Ace's proposed instruction was identical, except it added a fifth element:

Fifth, that at the time of taking possession or thereafter, Myron L. Ace intended to exercise control over property of another, or to aid a third person to exercise control over property of another, permanently or for so extended period of time or under such circumstances as to acquire the major portion of the economic value or benefit of the property; or intended to dispose of the property of another for the benefit of [himself] or a third person.

Ace was correct that he was entitled to an instruction on his theory of the case that although he received the property knowing that it was probably stolen, he did not intend to keep the property if it was stolen. In *Andrew v. State,* 653 P.2d 1063 (Alaska App.1982) the defendant argued that the current receiving stolen property statute was unconstitutionally vague. The state responded that the current statute should be interpreted to require an intent to permanently deprive the owner of property, in accordance with the supreme court's interpretation of the former statute in *Hensel v. State,* 604 P.2d 222 (Alaska 1979). In *Andrew,* we stated:

In the present case, the state argues, and we agree, that consistent with *Hensel,* the requirement of an intent by the accused to deprive the owner of property which has been stolen must be implied as an element of criminal intent under AS 11.46.190. As was the case with former AS 11.20.350, the prosecution need not allege an intent to deprive or produce affirmative evidence of such an intent as part of its case-in-chief in order to establish a *prima facie* case. We believe that the implicit requirement of an intent to deprive under AS 11.46.190 should be identical to the intent specified for the offense of theft by taking, as set forth in AS 11.46.100(1). This provision states:

*Theft defined.* A person commits theft if

(1) with intent to deprive another of property or to appropriate property of another to himself or a third person, he obtains the property of another.

*Andrew,* 653 P.2d at 1066–67 (footnote omitted).

The state argues that we erred in deciding that it was necessary to prove the defendant received stolen property "with *intent* to deprive another of property or to appropriate property of another to himself or a third person." *Id.* at 1067 (emphasis added). The state points out that "a person acts 'intentionally' with respect to a result described by a provision of law defining an offense when his conscious objective is to cause that result." AS 11.81.900(a)(1). The state argues that it is impossible to have a conscious objective of depriving an owner of property without *knowing* that the property was stolen. However, the statute now provides that a defendant has only to be *reckless* about whether the stolen property involved in the offense is actually stolen. AS 11.46.190.

■ We believe the state's position is well-taken and that clarification of our holding in *Andrew* is appropriate. Since the theft by receiving statute now provides that a defendant has only to be *reckless* about whether the property involved in the offense is actually stolen, it would be incon-

sistent to require proof that the defendant also intended to actually deprive a particular owner of the stolen property in question. To avoid inconsistency, the secondary intent requirement for theft by receiving should properly focus on the intent of the accused toward the stolen property, and not on his intent toward the owner of that property. Thus, in addition to establishing that the accused acted with reckless disregard for the fact that property was stolen, the state need only establish that he intended to appropriate the stolen property to his own use, or to the use of some third party who is not the rightful owner.[1]

The state also argues that Ace's proposed instruction is misleading because it does not fully define "deprive" and does not define "appropriate" at all. We assume that Ace's proposed instruction could be improved. However, we conclude that Ace's instruction was sufficient to require the trial court to give an instruction on the state of mind which Ace had to have to be guilty of theft by receiving. *See Carman v. State,* 658 P.2d 131, 135 (Alaska App.1983). (The court does not need to give an erroneous instruction, but if an erroneous instruction alerts the court to an issue not covered, the court may have a duty to provide further instructions.)

■ The state argues that failure to give Ace's instruction or another similar instruction was harmless error. The state points out that the trial judge specifically allowed Ace to fully argue to the jury his defense that he was not guilty because he did not intend to deprive the rightful owners of their property but instead intended to turn the property over to the police if it was stolen. The state also points out that the prosecutor never objected to Ace's argument but instead argued facts which would tend to disprove Ace's defense, thereby implicitly acknowledging that the defense, if believed by the jury, was legitimate. However, we conclude that the failure of the trial judge to instruct on Ace's defense was not harmless error. We believe that, under the instructions given by the court, Ace may have been handicapped in presenting his defense. Once Ace presented some evidence to raise the issue of his state of mind in retaining the stolen property, he was entitled to an instruction. The instruction on his state of mind was absolutely critical to his defense. Such an instruction certainly might have lent more credence to Ace's arguments. We are also concerned that even if the jury believed Ace, under the instruction which the trial court gave, they still could have found every element of the offense of theft by receiving and convicted him. We are also concerned that under the instruction given by the court the jury might have placed the burden of proof on Ace to establish his defense since no instruction made it clear to the jury that the prosecution had to disprove Ace's defense and that it had the burden of proof beyond a reasonable doubt. We therefore conclude that the failure of the trial court to give Ace's instruction, or another one which instructed the jury on his defense, was not harmless error. Our disposition of this point makes it unnecessary for us to address Ace's argument that his sentence is excessive.[2]

The conviction is REVERSED.

---

1. *See* AS 11.46.990(1), (2). In defining what constitutes an intent to appropriate property, it is helpful to refer to the commentary on the tentative draft of the Alaska Revised Criminal Code, which specifically discusses the terms "appropriate" and "deprived" by reference to the accused's intent toward stolen property, rather than his intent toward the owner of that property. In keeping with the discussion in the commentary, we believe that an intent to appropriate property may be defined as an intent on the part of the accused to exert permanent or virtually permanent control over stolen property, or an interest to act in such a way as to cause permanent or virtually permanent loss to any possible owner of the possession or use of the property. *See* Alaska Criminal Code Revision Part III, at 20 (Tent. Draft 1977) (Commentary to AS 11.46.990).

2. Ace argues that the trial court erred in not granting a mistrial when the prosecutor misstated the effect of the presumption of innocence in front of the jury. We conclude that the trial court's immediate action in instructing the jury properly on the presumption of innocence cured any problem created by the prosecutor's statement and therefore the trial judge

did not err in denying Ace's mistrial motion. *Roth v. State,* 626 P.2d 583, 585 (Alaska App. 1981). We reach this issue in order to make clear that there is no impediment to retrying Ace because of a mistrial caused by prosecutorial misconduct.