Gary W. GLIDDEN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–4055.

Court of Appeals of Alaska.

Nov. 27, 1992.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellant.

Cynthia L. Herren, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Gary W. Glidden was convicted by a jury of theft in the second degree in violation of AS 11.46.130(a)(1). He appeals, contending that Acting Superior Court Judge Jane F. Kauvar erred in responding to the jury's request for clarification of the term "deprive," as defined in AS 11.46.990(8). We reverse.

## FACTS AND PROCEDURAL BACKGROUND

After living together for approximately two years, Gary Glidden and Nina Brown separated. Several weeks later, Brown discovered that a stereo receiver and compact disc player she had recently purchased had been taken from her apartment. After a short time, these items were found in the possession of David Nelson, a friend of Glidden's. Nelson reported that Glidden had given him the stereo equipment for safekeeping, while Glidden was outside the state on a trip. According to Nelson, Glidden had said that the equipment belonged to Brown and that Glidden intended to give it back to her when he returned from his trip.

The state charged Glidden with second-degree theft for taking the stereo equipment from Brown. "Theft" is defined in AS 11.46.100:

> A person commits theft if (1) with intent to deprive another of property or to appropriate property of another to oneself or a third person, the person obtains the property of another....

With reference to this provision's requirement of an "intent to deprive," AS 11.46.990(8)(A) states:

> (8) "deprive" or "deprive another of property" means to (A) withhold property of another or cause property of another to be withheld from that person permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to that person....

At trial, Glidden defended against the theft charge by asserting that he had not acted with intent to deprive Brown of her stereo equipment. Relying on David Nelson's testimony that Glidden intended to give the equipment back to Brown after returning from his trip, Glidden argued that he never intended to deprive Brown of her property permanently or for so extended a period that the major portion of its economic value or benefit would be lost to her. Glidden maintained that his intent to take the equipment from Brown temporarily did not amount to theft.

In submitting Glidden's case to the jury, Judge Kauvar gave instructions that included the statutory definition of "deprive." During the course of its deliberations, however, the jury wrote a note asking Judge Kauvar to clarify the meaning of the statutory definition. The jury's note asked:

> Does 'benefit is lost to him' in the definition of deprive ... mean only the economic benefit or is this a separate point of the law stating that loss of the opportunity of personal use is breaking the law too?

Judge Kauvar consulted with the parties as to an appropriate response. Glidden argued that, as set out in the statutory definition of "deprive," AS 11.46.990(8)(A), the phrase "economic value or benefit," should be read to mean "economic value" or "economic benefit," thus excluding the loss of any non-economic benefit. Judge Kauvar concluded, however, that the word "economic" modified only the word "value," and not the word "benefit."[1] Over Glidden's objection, the judge answered the jury as follows:

> The statute refers to loss of major portion of its economic value *or* major portion of its benefit. [Emphasis original].

After receiving this response, the jury returned a verdict finding Glidden guilty of theft, as charged.

## DISCUSSION

On appeal, Glidden challenges Judge Kauvar's reading of the disputed statutory language. Glidden argues, as he did below, that the word "economic" must be read to apply to both "value" and "benefit." Glidden maintains that the court's error in adopting a contrary interpretation of the statutory language improperly allowed the jury to convict him of theft even though he intended to take Brown's stereo equipment only temporarily.

 The issue presented in this case is one of statutory interpretation, as to which this court must exercise its independent judgment on review. *Conner v. State*, 696 P.2d 680, 682 (Alaska App.1985). In interpreting the disputed statute, we must begin by considering the legislative intent leading to its enactment. *Wylie v. State*, 797 P.2d 651, 657 (Alaska App.1990).

 The definition of "deprive" contained in AS 11.46.990(8)(A) was taken almost verbatim from section 11.46.990(3)(A) of the Tentative Draft of Alaska's Revised Criminal Code. Alaska Crim.Code Revision, Tentative Draft, Part 3 at 97–98 (1977). The tentative draft's definition, in turn, was drawn from similar definitions in the Oregon Revised Statutes and the Proposed Michigan Revised Criminal Code. *Id.*, Part 3, Appendix I at 104. The commentary to section 11.46.990(3) of the tentative draft and the commentary to AS 11.46.990(8) provide no insight into the intended use of the word "economic" in those provisions. Likewise, reference to the statutory and case law of Oregon and Michigan provides no useful guidance.

Some guidance may be gleaned from the provisions of the Model Penal Code, whose definition of "deprive" is similar to AS 11.46.990(8). Model Penal Code section 223.2, the code's basic theft provision, re-

---

1. Judge Kauvar stated, in relevant part:
 Well, if benefit doesn't seem—mean something different than value, then it—what's it in there for? Economic benefit isn't really a word. Economic value, I suppose, is a word. I don't know if economic benefit is a—neces-
 sarily a word. So that if benefit isn't in there, because you can deprive somebody of the benefit of their property—even if the value, ultimately, doesn't go down—then the word shouldn't be in the statute. And it's not *and* benefit, it's *or* benefit. [Emphasis added.]

quires that theft be committed with the purpose to "deprive." The code defines "deprive" in section 223.0(1), which states: (1) "deprive" means: (a) to withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation; or (b) to dispose of property so as to make it unlikely that the owner will recover it. Model Penal Code section 223.0(1) (1985).

Although the Model Penal Code definition of "deprive" refers only to the withholding of "a major portion of ... economic value," omitting reference to "benefit" or "economic benefit," the commentary to the code makes it clear that the code's drafters intended "economic value" to be construed broadly, encompassing not only the intrinsic worth of a stolen item, but also any benefit the owner of the item might gain from its use—a form of "economic value" that the commentary characterizes as "beneficial use."

Thus, for example, in emphasizing that an intent to appropriate property temporarily will not ordinarily qualify as an intent to "deprive," the Model Penal Code commentary discusses "economic value" in terms of beneficial use rather than intrinsic worth:

> Also covered [under the definition of "deprive" in section 223.0(1) ] is the case where the actor intends to return the property without exposing it to risk of loss in the meantime but also intends to withhold it "for so extended a period as to appropriate a major portion of its economic value." For example, a person would be guilty of theft ... if he surreptitiously "borrows" his neighbor's lawn mower for the summer, intending to return it in the fall when it would no longer be needed or useful. It would likewise be theft to take tires, a battery, radioactive substances, or other similar goods with a limited useful life, even though the actor intended to return the item taken after a prolonged use that substantially dissipated its value to the owner. On the other hand, unauthorized borrowing or use of personal property is excluded from the offense where the period is not so extended as to appropriate a major portion of its economic value or in cases where the use or disposition of the property does not make it unlikely that the owner will recover its *beneficial use.* [Emphasis added.]

Model Penal Code, section 223.2 commentary at 174–75 (1985).

It is significant that, though differing somewhat in form, the Model Penal Code's definition of "deprive" has been considered similar in substance to the definition of "deprive" contained in AS 11.46.990(8)(A). *See, e.g., Alaska Criminal Law Manual,* Derivation and Prior History Table at 6–20 (revised 1989). *See also* W.R. LaFave & A.W. Scott, *Substantive Criminal Law,* section 8.5 at 357 & n. 4 (1986) (listing AS 11.46.990 as a provision following the Model Penal Code's approach in defining "deprive"). The substantial similarity between Alaska's definition of "deprive" and the definition incorporated in the Model Penal Code strongly suggests that, when the drafters of Alaska's definition substituted the phrasing "economic value or benefit" for the Model Penal Code's "economic value," they intended to clarify, rather than alter, the Model Penal Code's definition. This conclusion finds support in the commentary to the tentative draft of the Alaska Revised Criminal Code, which describes the tentative draft's definition of "deprive,"—a definition ultimately incorporated verbatim in AS 11.46.990(8)—as being "[c]onsistent with existing law." Alaska Crim.Code Revision, Tentative Draft, Part 3 at 20 (1977).

It thus seems fair to conclude that the word "benefit," as it appears in AS 11.46.990(8)(A), was meant to make explicit what the Model Penal Code left implicit: that, for purposes of the definition of "deprive," the "value" of stolen property includes not only its intrinsic worth, but also the value of the benefits it confers on its owner— that is, the value of its beneficial use. Our prior decisions also support this conclusion. In *Ace v. State,* 672 P.2d 159, 162 n. 1 (Alaska App.1983), for example, we said:

[W]e believe that an intent to appropriate [or deprive] ... may be defined as an intent on the part of the accused to ... cause permanent or virtually permanent loss to any possible owner of the possession *or use of* the property. [Emphasis added.]

This language from *Ace* was, in turn, based on the commentary to the tentative draft of our theft statute, which clarifies the intent of the statutory definition of "deprive:"

The thrust of the definitions of "deprive" and "appropriate" is that they require a purpose on the part of the defendant to exert permanent or virtually permanent control over the property, or to cause permanent or virtually permanent loss to the owner of the possession *or use of the property*. Consistent with existing law, it is this feature that distinguishes theft from other offenses which, while similar to theft, are satisfied by an intent to obtain only temporary possession or use of property or to cause temporary loss to the owner (e.g., TD AS 11.46.240, Unauthorized Use of Propelled Vehicle).

Alaska Crim.Code Revision, Tentative Draft, Part 3 commentary at 20 (1977). [Emphasis added.]

Given the clarifying purpose of Alaska's statutory reference to both "value" and "benefit," there seems no reason to suppose that the modifier "economic" should not apply to both words. Because the Model Penal Code's use of "value" encompasses the dual concepts of intrinsic value and value of beneficial use, both of which are governed by the modifier "economic" under the code's formulation, both of these concepts, expressed separately in Alaska's reference to "value or benefit," should logically continue to be governed by the modifier "economic."

A common sense analysis of the structure of AS 11.46.990(8)(A) supports the same conclusion. Had the drafters of the statute intended "economic" to modify only "value," and not "benefit," they could readily have made their intent clear by using phrasing such as "the major portion of its economic value or *its* benefit," instead of "the major portion of its economic value or benefit." Notably, the New York Court of Appeals, interpreting a statutory definition of "deprive" that is virtually identical to Alaska's, has indicated that the word "economic" governs both "value" and "benefit." *See People v. Jennings*, 69 N.Y.2d 103, 512 N.Y.S.2d 652, 660, 504 N.E.2d 1079, 1087 (1986).

Read in this manner, AS 11.46.990(8)(A) means that a person who appropriates property with intent to withhold it for so extended a period as to result in a loss of "the major portion of" its intrinsic worth intends to "deprive" the owner of its "value," whereas a person who appropriates property with intent to withhold it for so extended a period as to result in the loss of "the major portion of" the worth of its beneficial use intends to "deprive" the owner of its "benefit." In either event, however, deprivation could occur only when the determination of what constitutes "the major portion of" the property's intrinsic worth or beneficial use is assessed in economic terms.

■ The most common way of expressing the intrinsic worth of property in economic terms—its "economic value"—is by calculating its fair market value. Other ways are certainly possible. *See, e.g., Willett v. State*, 826 P.2d 1142 (Alaska App. 1992). The economic worth of an item's beneficial use—the "economic benefit" it confers on its owner—can also be expressed in various ways. Using the Model Penal Code's example of a lawn mower that is temporarily taken from its owner, economic benefit could be measured by the cost the mower's owner would pay for mowing while deprived of the mower; or, if the owner used the mower as a source of income, its economic benefit could be expressed in terms of the owner's lost profits.

Using the present case as another example, the economic value of the stereo equipment Glidden took from Brown could be expressed as the price Brown had recently paid for it. The economic benefit that Brown derived from using the equipment might be quantified in a variety of ways: as the expense Brown might have incurred

in renting comparable equipment when she wanted to listen to music; alternatively, had Brown obtained or kept the equipment for business purposes, its economic benefit could be stated in terms of lost revenues.

■ For present purposes, the crucial point is that, under AS 11.46.990(8)(A), "value" and "benefit" must both be measured in economic terms. Just as a temporary taking of property that resulted only in the loss of sentimental value would not qualify under the statutory definition of "deprive," so the definition would not be met by a taking that resulted only in the loss of an abstract beneficial use whose value was purely sentimental or incapable of being quantified in economic terms.

Beyond this, however, Glidden has argued that the statutory term "economic benefit" excludes all beneficial uses that are not economic *per se*. This position seems unduly narrow. It is self-evident that property can have "economic value" even though its owner possesses it for reasons that are not *per se* economic: the economic value of a house can be determined by estimating its fair market value, regardless of whether the house is actually for sale or whether its owner contemplates selling it. Similarly, property that is capable of being used to generate revenue or to avoid cost confers an "economic benefit" on its owner, regardless of whether the owner was actually using the property for monetary gain when it was taken. For purposes of AS 11.46.990(8)(A), the "value" and "benefit" of property need only be capable of being expressed and evaluated in economic terms; neither the nature of the property nor its beneficial use need be inherently economic.

■ We must also emphasize that, in order to determine if a temporary taking of property would result in loss of "the major portion of its economic ... benefit" under AS 11.46.990(8)(A), the beneficial use of the property must be evaluated in reference to its expected life span. As our discussion above indicates, Alaska's theft statutes are intended to apply in situations where the accused acts with intent "to exert permanent or virtually permanent control over ... property, or to cause permanent or virtually permanent loss to the owner of the possession or use of the property." Alaska Crim.Code Revision, Tentative Draft, Part 3 at 20 (1977).

The definition of "deprive" set out in AS 11.46.990(8)(A) reflects this intent. Hence, a person who temporarily dispossess an owner of property but returns it with little or no diminution in its market value does not "deprive" the owner of "the major portion of the economic value" of that property. *See, e.g., Jennings,* 512 N.Y.S.2d at 660–61, 504 N.E.2d at 1087–88. This is so even though the entire value of the property was unavailable to its owner while the property was in the possession of the person who took it. For the same reason, a person who temporarily prevents an owner from using property but returns it while the property retains most of its useful life does not "deprive" the owner of "the major portion of the economic ... benefit" of the property, even though the owner may have been entirely deprived of its use during its temporary unavailability.

Determining what constitutes "the major portion" of the economic value or benefit of a given article of property requires a case-by-case evaluation of the totality of the circumstances, including the length of the intended taking, the nature of the property taken, and property's normal useful life:

> An intent to return property taken, in order to qualify as a defense to larceny, must be an intent to return within a reasonable time. In determining what is a reasonable time, much depends upon the nature of the property and its expected useful life, for to deprive the owner of the property for so long a time that he has lost a "major portion of its economic value" is to deprive him for an unreasonable time. It is one thing to take another's fresh strawberries with intent to return them two weeks later, another thing to take his diamond ring with a like intention.

W.R. LaFave & A.W. Scott, *Substantive Criminal Law,* § 8.5 at 361 (1986) (footnotes omitted). *See also* Model Penal Code § 223.2, commentary at 174–75 (1985).

With these principles in mind, we return to the circumstances of Glidden's case. Glidden based his defense on the premise that he intended only a temporary taking of Brown's stereo equipment and thus did not act with the requisite intent to "deprive" Brown of her property. Glidden relied on evidence indicating that he planned to return Brown's property within several weeks of taking it. In response to the jury's question whether the phrase "economic value or benefit" in the statutory definition of "deprive" meant only the loss of "economic benefit," or whether it included "loss of the opportunity of personal use," the trial court stated: "The statute refers to loss of [the] major portion of its economic value or [the] major portion of its benefit."

The trial court's response was legally incorrect. As we have seen, the reference in AS 11.46.990(8)(A) to "economic value or benefit" should properly be read to mean "economic value" or "economic benefit."

■ We must separately consider whether this error was harmless in the specific context of Glidden's case. The note that the jury sent to the court attempted to differentiate between loss of an "economic benefit" and "loss of the opportunity of personal use." As our discussion in this opinion demonstrates, loss of personal use—or beneficial use—may properly be considered an "economic benefit," provided that the use is not so abstract or conjectural as to defy evaluation in economic terms. For this reason, if the exclusive effect of the trial court's erroneous instruction was to allow the jury, in applying the statutory definition of "deprive," to consider Brown's loss of personal use of her stereo equipment as a "benefit," we would be inclined to say that the error was harmless—at least in the absence of some indication that the "personal use" the jury contemplated was a purely sentimental or otherwise unquantifiable use.

■ Our review of the record nevertheless convinces us that the potential effect of the court's error was not limited in this manner. During his final argument to the jury, Glidden's counsel advanced the claim that Glidden's intent to take Brown's stereo equipment temporarily did not amount to the requisite intent to deprive. In the closing portion of the state's final argument to the jury, the prosecutor responded to Glidden's argument by suggesting that, under applicable law, Glidden acted with intent to deprive even if his only purpose was to prevent Brown from using the stereo equipment for the short time that it was in his control. Specifically, the prosecutor told the jury that Glidden's defense would be arguable only:

> [i]f you believe for the slightest that the defendant had no intent to deprive her of the property, such that she was inconvenienced. Sure, she was inconvenienced. She didn't have it for the better part of a couple of weeks. So his intent was. I submit to you, under the law, that's enough. That's enough. Remember, he appropriated the property of Nina [Brown] to himself, for a little bit, and then to [David] Nelson. It's all it takes. It's right there. You can read the definitions all you want.

This argument could readily be interpreted as a claim by the state—one that is legally untenable—that any temporary but total interference with Brown's use of her stereo equipment necessarily amounted to a loss of "the major portion of its ... benefit" while it was unavailable to her. Under this theory, Glidden acted with intent to deprive even if he only intended to prevent Brown from using her stereo equipment for a short time.

In light of this argument, we believe it highly likely that the jury's request for clarification of the meaning of "benefit" may have reflected its underlying confusion as to whether Brown's total loss of the beneficial use of her stereo equipment would qualify as a loss of "the major portion of its benefit," even though the loss was of short duration. This is plainly the danger that Glidden's trial counsel foresaw and attempted to call to the court's attention. In opposing the trial court's decision to instruct the jury that the word "economic" applied only to "value," defense counsel repeatedly emphasized that, unless the

court instructed the jury that "benefit" was limited to "economic benefit," the jury might find Glidden guilty even if it concluded that he acted only with intent to prevent Brown from using her equipment temporarily.

Judge Kauvar attempted to address this danger by emphasizing, in her response to the jury, that, under the statutory definition of "deprive," "the major portion of" either the economic value of the equipment or of its benefit would have to be lost. This approach, however, does not resolve the apparent problem. The jury's confusion was evidently not with the need to find that Glidden intended Brown to lose "the major portion of" the use of her equipment, but rather with the time frame to be used in deciding what constituted "the major portion of" the equipment's use.

If "the major portion of" the stereo equipment's beneficial use were measured only by reference to the period when Glidden exercised control over it, the jury would undoubtedly have found that Glidden took the property with intent to cause Brown to lose the major portion of its benefit *during that time*. This would be true even if the jury believed that Glidden intended to take the property for only a short time. The jury would have been far less likely to make this same finding if it understood that "the major portion of" the property's beneficial use must be assessed over the entire period of its expected useful life, not just the period of its unavailability to Brown. This potential area of confusion, which Glidden's trial counsel repeatedly pointed out to the trial court, was left unresolved by the court's response to the jury.

Strictly speaking, this problem is only indirectly related to the narrowly framed legal issue that Glidden has raised on appeal: whether the word "economic" modifies the word "benefit" in AS 11.46.-990(8)(A). The trial court's error in instructing the jury that the word "economic" did not modify the word "benefit" would in all likelihood have been inconsequential had the court's response to the jury's inquiry emphasized that the issue of whether Glidden intended Brown to lose "the major portion of" the beneficial use of her stereo equipment must be decided in terms of the equipment's expected useful life, and not just in terms of the period of its unavailability to Brown.

Nevertheless, as we have indicated, in arguing that the disputed statute required proof of an "economic benefit," Glidden's trial counsel made abundantly clear to the court his concern that the jury might convict him of theft for, in effect, "joyriding" Brown's property. Under the specific circumstances of this case, we believe that the potential for a verdict based on a misunderstanding by the jury of applicable law would have been substantially reduced had the trial court correctly instructed that the statutory phrase "economic value or benefit" meant economic value or economic benefit.

■ When a jury voices confusion that is not resolved by previously given instructions, the trial court bears the ultimate "responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria. When a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy." *Des Jardins v. State*, 551 P.2d 181, 190 (Alaska 1976) (quoting *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946)). Here, Glidden was entitled, at a minimum, to a correct statement of the law. We are unable to say that the trial court's erroneous instruction did not appreciably affect the jury's verdict. *Love v. State*, 457 P.2d 622, 634 (Alaska 1969).

Accordingly, Glidden's conviction must be REVERSED.

MANNHEIMER, Judge, concurring.

I am writing, not to supplement Chief Judge Bryner's careful analysis of AS 11.-46.990(8)(A), but to summarize what, to my mind, is the underlying flaw in Glidden's conviction.

The trial court instructed the jury that Glidden could be found guilty of theft if he deprived Brown of the "benefit" of owning

the stereo, even if this benefit was not an "economic" benefit. This was error; for theft to be committed, the owner must suffer deprivation of an economic benefit of the property. But this error, of itself, was harmless in Glidden's case, because the only benefit being litigated was an economic benefit.

The government claimed that Glidden had deprived Brown of the use of stereo equipment. As we recognize in our main opinion, one of the "economic" benefits of owning or possessing property is the ability to make use of the property (so long as this use can be evaluated in monetary terms). The benefit of using stereo equipment to play music for one's enjoyment is an economic benefit. Though the trial court may have used erroneous reasoning when formulating its answer to the jury, the substance of the court's answer was correct: the jury was legally entitled to treat Brown's ability to use the stereo equipment as a "benefit" when deciding whether Glidden was guilty of theft.

The flaw in Glidden's conviction lies in the fact that the jury instructions allowed the prosecutor to argue that Glidden could be convicted of theft even if the jury accepted Glidden's explanation that he had intended to deprive Brown of the stereo equipment for only a few weeks. The prosecutor argued that complete deprivation of the use of the stereo equipment, even for a short period of time, constituted the loss of "the major portion of its ... benefit" required for a theft conviction.

This argument was wrong. As the Model Penal Code's lawn mower example makes clear, the economic benefit of owning or using property is evaluated over the useful life of the property. Because the useful life of stereo equipment is several years, and because there was no evidence that renting another stereo system for a few weeks would have cost Brown nearly as much as buying a new one, the loss of a few weeks' use of the stereo equipment did not constitute a loss of the major portion of its benefit.

Given the prosecutor's closing argument and the failure of the jury instructions to

clarify the flaw in that argument, there is a strong likelihood that the jury convicted Glidden of theft even though they thought he had committed the equivalent of joyriding. For this reason, Glidden's conviction must be reversed.