STATE of Alaska, Appellant,

v.

William McCALLION, Appellee.

STATE of Alaska, Appellant,

v.

Anthony R. MOORE, Appellee.

STATE of Alaska, Appellant,

v.

Alfred H. KOMOK, Appellee.

STATE of Alaska, Appellant,

v.

Anthony SHELTON, Appellee.

Nos. A–4813, A–5068, A–5123, A–5124 and A–5215.

Court of Appeals of Alaska.

June 3, 1994.

---

John K. Bodick, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellant.

Suzanne Weller, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellees McCallion, Moore, and Komok.

Douglas Moody, Asst. Public Defender, Bethel, and John B. Salemi, Public Defender, Anchorage, for appellee Shelton.

\* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

Before COATS and MANNHEIMER, JJ., and WOLVERTON, District Court Judge.\*

## OPINION

WOLVERTON, District Court Judge.

The issue presented by these cases consolidated on appeal is whether the various trial courts properly interpreted former AS 33.-20.010, the statute enacted in 1960 governing "good-time credit" for sentence reductions due to good behavior while in custody. The trial courts uniformly interpreted this statute as requiring computation of good-time credit according to the "block" method used by the Alaska Department of Corrections (DOC) from 1960 through 1971, rather than by the "accrual" method that the DOC administratively adopted for use from 1971 to 1980. We find that the trial courts did not err in determining that the block method of computation was required, and we therefore affirm.

All of the appellees had prison terms that were affected by the DOC decision to alter the method of good-time-credit computation. There is no dispute that, under the block method used from 1960 through 1971, prisoners could receive reductions of up to one-third of their sentences, while under the accrual method administratively adopted for use from 1971 to 1980, prisoners could receive reductions only of up to one-fourth of their sentences. There is also no dispute as to the calculations of each prisoner's sentence under the two methods that the DOC had used to calculate good-time credit.[1] Thus, the only issue is whether the Alaska legislature intended to adopt the block computation method when it enacted AS 33.20.010 in 1960. We find that it did.

## BACKGROUND

The history of good-time credit in the Federal Bureau of Prisons (FBP) and the Alaska DOC is straightforward and essentially not in dispute.

Generally, prisoners are credited with a reduction in actual time served in custody for observing DOC rules. This reduction, which serves as an incentive for a prisoner to be on

1. Additionally, there has been no dispute that the DOC lacks authority to promulgate a regulation that contravenes the authorizing statute.

good behavior while incarcerated, is referred to as "good-time credit." Until 1980 there were two types of good-time credit. Under former AS 33.20.020, ch. 107, § 2, SLA 1960, *repealed by* ch. 166, § 21, SLA 1978 (effective January 1, 1980), prisoners had the opportunity to earn meritorious good-time credit for work service involving correctional institution duties or projects.[2]

The other type of good-time credit is for general good behavior and adherence to institutional rules and regulations. The correct computation of this credit, applicable to prisoners under former AS 33.20.010, ch. 107, § 1, SLA 1960, is the subject of this appeal.

From 1902 until 1948, during Alaska's territorial days when all prisoners were under federal jurisdiction, the FBP computed good-time credit using a "block" method. Act of June 21, 1902, ch. 1140, § 1, 32 Stat. 397.[3] Under the block method of good-time computation, the total amount of good time set forth by statute was computed according to a prisoner's total sentence and credited at the outset of the sentence. Thus, for example, a prisoner sentenced to a total term of incarceration of twelve months was entitled to five days of good-time credit per month. This total amount—sixty days—was given to the prisoner in a block at the beginning of the sentence, leaving ten months of actual time to serve in custody. However, the sixty days of good-time credit was subject to partial or total forfeiture for bad behavior at any time before the prisoner's term of imprisonment had been completed.

In 1948, Congress amended the good-time-credit law by adopting an "accrual" method of calculation. The amended statute specified that good-time credit was "to be credited as earned and computed monthly." Act of June 25, 1948, ch. 645, § 1, 62 Stat. 853.[4] Under this new accrual method, credit for good behavior was awarded periodically throughout a prisoner's term of incarceration. For example, the prisoner sentenced to a twelve-month term of incarceration would now accrue five days of good-time credit after each month served. Under this new method of calculation, the prisoner would have earned only fifty days of good-time credit at the end of ten months in prison (the time at which the prisoner would have been released under the prior method of computation). Thus, the prisoner would have to serve longer in prison to qualify for release under the new method of computation.

After Congress adopted this accrual method of good-time-credit calculation in 1948, the

---

**2.** Appellee McCallion, who was originally sentenced in 1974 and 1976, claimed below that he was entitled to credit for meritorious work service. Although the state opposed McCallion's claim at the trial level, the state has not appealed the trial court's finding that McCallion was eligible for awards of meritorious good-time credit under former AS 33.20.020 for the entire period of his sentence.

**3.** The substance of the 1902 act is embodied in 18 U.S.C. § 4161, Act of Sept. 14, 1959, P.L. 86–259, 73 Stat. 546:

§ 4161. **Computation generally**

Each prisoner convicted of an offense against the United States and confined in a penal or correctional institution for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run, as follows:

Five days for each month, if the sentence is not less than six months and not more than one year.

Six days for each month, if the sentence is more than one year and less than three years.

Seven days for each month, if the sentence is not less than three years and less than five years.

Eight days for each month, if the sentence is not less than five years and less than ten years.

Ten days for each month, if the sentence is ten years or more.

When two or more consecutive sentences are to be served, the aggregate of the several sentences shall be the basis upon which the deduction shall be computed.

(Repealed 1986).

**4.** In 1948, the pertinent portion of 18 U.S.C. § 4161 read as follows:

Each prisoner convicted of an offense against the United States and confined in a penal or correctional institution for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run, to be credited as earned and computed monthly[.]

FBP was confronted with the fact that when good time was "credited as earned and computed monthly" as the new law required, prisoners earned less good-time credit and were required to serve more time in custody than under the former method of computation. Because the FBP believed that Congress had not intended to reduce prisoners' total good-time credit, the FBP administratively adopted a hybrid system of good-time-credit computation. The FBP multiplied the number of months in a prisoner's sentence by the number of days per month of good-time credit listed in 18 U.S.C. § 4161—essentially computing the total amount of good-time credit in the same manner as under the former block method. Then, to award this same total good-time credit under the new accrual system, the FBP simply increased the monthly rate of accrual above the rate set forth in the statute. Under our example of the prisoner sentenced to twelve months in prison, the FBP would credit the prisoner with an accrual of six days per month rather than five days per month as authorized by statute, so that the prisoner would still be released at the end of ten months.

In *Hunter v. Facchine*, 195 F.2d 1007 (10th Cir.1952), the Tenth Circuit Court of Appeals ruled that the FBP hybrid method of computing good-time credit violated the statute:

> Obviously [prisoners] will be required to serve longer, if credited with only [5] days per month, rather than [6] days per month, . . . but that problem was for Congress and was resolved by it in the adoption of the new section. We think there is no ambiguity in the statute and that its clear language requires that [the good time credit specified in the statute] be computed monthly, as the months go by, and not [at the increased rate], as provided by the Bureau's rules.

*Id.* at 1009.

Alerted by the *Hunter* decision that it had inadvertently reduced the potential amount of good-time credit, on September 14, 1959, Congress returned to its former block method of computation by deleting the language "to be credited as earned and computed monthly" from the 1948 statute. P.L. 86–259, 73 Stat. 546 (1959).[5]

On February 9, 1960, less than five months after Congress had amended 18 U.S.C. § 4161 to return federal good-time computation to the former block method, a good-time-credit bill that was virtually identical to the newly-amended 18 U.S.C. § 4161 was introduced in the Alaska House of Representatives. (H.B. 320, 1st Leg., 2d. Sess.1960). This bill was adopted into law essentially unchanged as former AS 33.20.010.[6]

5. Congress explained its intent as follows:

> The Attorney General points out further that in *Hunter v. Facchine,* the new language was interpreted as requiring good-time to be computed on the basis of actual time served rather than on the basis of the term of the sentence as imposed by the court. The effect of this interpretation is to require well-behaved prisoners to serve longer periods of confinement than they would under the method of computation which had been used through half a century.
> The proposed legislation, by deleting the words "to be credited as earned and computed monthly," is designed to provide for the return to the method of computing good conduct time which was followed between 1902 and 1948. H.R. No. 935, 86th Cong., 1st Sess. *reprinted in* 1959 U.S.C.C.A.N. 2518, 2519 (citation omitted).

6. This 1960 version of AS 33.20.010 provided:

> **Computation generally.** (a) Each prisoner convicted of an offense against the state and confined in a penal or correctional institution for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subject to punishment, is entitled to a deduction from the term of his sentence beginning with the day on which the sentence starts to run, as follows:
> (1) five days for each month, if the sentence is not less than six months and not more than one year;
> (2) six days for each month, if the sentence is more than one year and less than three years;
> (3) seven days for each month, if the sentence is not less than three years and less than five years;
> (4) eight days for each month, if the sentence is not less than five years and less than ten years;
> (5) ten days for each month, if the sentence is ten years or more.
> (b) When two or more consecutive sentences are served, the basis upon which the deduction is computed is the aggregate of the several sentences.
> Ch. 107, § 1, SLA 1960.

The legislative intent at the time former AS 33.20.010 was enacted was explicit and clear: "[t]he principle of good time for prisoners should be adopted into Alaska law as it is found in present federal laws dealing with Alaska." 1960 House Journal 194. Notably, the Alaska law omitted the accrual language "to be credited as earned and computed monthly" that Congress had deleted from 18 U.S.C. § 4161 in September 1959.

Before statehood and the enactment of former AS 33.20.010, Alaska prisoners were incarcerated in federal correctional facilities both inside and outside of Alaska, and they were subject to federal good-time-credit laws. Although most of these federal facilities within Alaska were ultimately leased to the state, at the time of statehood, Alaska immediately negotiated contracts for operation of the correctional facilities with the various municipalities where the institutions were located. By the late 1960s, Alaska had either built new facilities or taken over administration of the jails in most of the major Alaska communities. Many of the same correctional administrators who had been employed by the federal government, and later by the municipalities, were then employed by the state to continue operating the same prisons.

From the time 18 U.S.C. § 4161 was amended in 1959 until 1971, Alaska prisoners were awarded good-time credit under the block method, first under the federal law and thereafter under AS 33.20.010. In 1971, however, the DOC, without any change in AS 33.20.010 or any new statutory authority, administratively adopted the accrual method of computation that the federal government had explicitly rejected by the 1959 amendment to 18 U.S.C. § 4161. Under the accrual method chosen by DOC, the ultimate good-time sentence deduction was reduced from one-third to one-fourth of the total sentence of incarceration. In order to avoid *ex post facto* effect, the DOC applied the new accrual method of accounting only to post-July 1, 1971, prisoners.

It was not until 1978 that the Alaska legislature explicitly changed the law by adopting a simplified accrual method of good-time computation that allowed for "a deduction from the term of imprisonment of one day for every three days of good conduct served." Former AS 33.20.010, ch. 166, § 17, SLA 1978 (effective January 1, 1980). This new legislation explicitly mandated a one-fourth reduction in the sentenced period of incarceration.

In 1986, the legislature again amended AS 33.20.010. Ch. 11, § 1, SLA 1986. The statute in its current form provides that a prisoner will receive "a deduction of one-third of the term of imprisonment ... if the prisoner follows the rules of the correctional facility." AS 33.20.010(a).

## STANDARD OF REVIEW

■ On appeal the state argues that the trial courts improperly applied the substitution of judgment standard of review, instead of limiting their review of former AS 33.20.010 to whether the DOC's 1971 interpretation of that statute had a reasonable basis in law and fact. In *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987), the Alaska Supreme Court set forth the two standards of review as follows:

> The rational basis test is used where the questions at issue implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function. It is generally applied in two circumstances:
>
>> First, ... where the agency is making law by creating standards to be used in evaluating the case before it and future cases. Second, ... when a case requires resolution of policy questions which lie within the agency's area of expertise and are inseparable from the facts underlying the agency's decision.
>
> When applying the rational basis test, we merely seek to determine whether the agency's decision is supported by the facts and has a reasonable basis in law, even if we may not agree with the agency's ultimate determination.
>
> The substitution of judgment standard is applied where the questions of law presented *do not* involve agency expertise or where the agency's specialized knowledge and experience would not be particularly

probative as to the meaning of the statute. As we recently observed in *Earth Resources:*

> The standard is appropriate where the knowledge and experience of the agency is of little guidance to the court *or* where the case concerns "statutory interpretation or other analysis of legal relationships about which the courts have specialized knowledge and experience."

Application of this standard permits a reviewing court to substitute its own judgment for that of the agency even if the agency's decision had a reasonable basis in law.

(Citations omitted) (footnote omitted).

In the cases consolidated on appeal, the trial courts were correct in applying the substitution of judgment standard of review. The policy considerations at issue in selecting a method of good-time-credit computation had been explicitly considered by the federal and state legislatures that have enacted and amended the good-time statutory schemes since 1902. Here, as in *Hunter v. Facchine*, 195 F.2d 1007 (10th Cir.1952), the question is one of statutory interpretation, and the knowledge, experience, and expertise of the DOC does not offer guidance to the reviewing court in resolving the issue of whether the 1960 Alaska legislature intended to require a block or an accrual method of good-time-credit computation.

■ As the question is one of statutory interpretation, this court determines it *de novo*, without deference to the trial court or to the administrative agency decisions. *Michael v. State*, 767 P.2d 193, 197 (Alaska App.1988), *rev'd on other grounds*, 805 P.2d 371 (Alaska 1991). In so doing, we adopt the rules of law that are most persuasive in light of precedent, policy, and reason. *Zsupnik v. State*, 789 P.2d 357, 359 (Alaska 1990); *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

## DISCUSSION

While the policy reasons for the 1971 DOC decision to administratively adopt an accrual

method may have been sound and even laudatory, the state's arguments on the applicable standard of review and related issues are without merit. Citing *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), as authority, the state argues that a " 'gap' exists regarding the interpretation of former AS 33.20.010 because the legislature did not explicitly state how good time was to be computed under the ambiguous federal law." Alternatively, however, the state claims that "[t]he plain language of [former AS 33.20.010] clearly provides for the accrual basis," and that "the plain language of the statute mandated that good time be awarded as it was earned." [7] Both arguments fail in their conclusions regarding the meaning of the statute.

Read alone, without reference to any legislative history or historical application, the language of former AS 33.20.010 (1960) does not explicitly or implicitly indicate whether a block or an accrual method was to be used for good-time-credit computation. Thus, although the plain meaning of the statute may be considered, *Gibson v. State*, 719 P.2d 687, 690 (Alaska App.1986), it is not particularly helpful in attempting to interpret the good-time statute in question here.

■ That being the case, we must look to a variety of resources for assistance, including federal interpretations of similar federal statutes. *Morton v. Hammond*, 604 P.2d 1, 2 (Alaska 1979); *Drickersen v. Drickersen*, 546 P.2d 162, 167 n. 9 (Alaska 1976). Also, "[c]ontinuous, contemporaneous and practical interpretation by executive officers and the courts is a valuable aid in determining meaning . . . ." *Public Defender Agency v. Superior Court*, 534 P.2d 947, 952 (Alaska 1975). Finally, and most importantly in the cases before us, the legislative history of the statute provides useful assistance in interpretation. *City of Homer v. Gangl*, 650 P.2d 396, 400 n. 4 (Alaska 1982). Consideration of these resources compels the conclusion that when the Alaska legislature enacted former

---

**7.** Even if the plain-meaning rule were applicable, the state has, to some degree, glossed over the fact that strict adherence to the plain-meaning rule has been expressly and repeatedly rejected

in Alaska. *City of Homer v. Gangl*, 650 P.2d 396, 400 n. 4 (Alaska 1982); *State v. Alex*, 646 P.2d 203, 208 n. 4 (Alaska 1982); *State v. City of Haines*, 627 P.2d 1047, 1049 n. 6 (Alaska 1981).

AS 33.20.010 (1960), it intended to require the block method of good-time-credit computation as used by the FBP at the time.

The state does not argue, and there is nothing to suggest, that there has ever been any question regarding interpretation of any of the federal good-time statutes enacted and amended since 1902. While the amount of good-time credit to be given has been questioned, as in *Hunter*, there is no authority to suggest that the applicable method of good-time-credit computation, block or accrual, has ever been raised as an issue. When block language has been used, a block method has been employed. When legislatures have added accrual language, such as "earned and credited monthly," there has apparently never been any question that an accrual method was to be applied.

In arguing that the continuous, contemporaneous, and practical interpretation by executive officers and the courts should be used as an aid in statutory interpretation, the state starts the clock running in 1971 when the DOC, without any change in statutory authorization, chose to adopt an accrual method. In reality, however, the history of continuous, contemporaneous, and practical interpretation of applicable good-time statutes commences with the 1902 federal statute, whose subsequent history is inextricably intertwined with the history of Alaska's good-time statutes.

As the state pointed out in some detail, prior to statehood, Alaska prisoners, prisons, and prison officials operated under federal law and FBP regulations. At statehood, when the Alaska legislature adopted former AS 33.20.010 (1960), which was very similar to former 18 U.S.C. § 4161 (1959), these very same prisoners, prisons, and prison administrators continued in operation under Alaska law. The continuity from the federal system to the state system was virtually seamless, and therefore 1902, and not 1971, must serve as the starting date for aid in statutory interpretation. Again, however, the state makes no argument whatsoever that federal administrators or courts ever questioned whether the federal good-time statutes applicable at any given time required use of a block or an accrual method of good-time credit.

This leads directly to the legislative history of the Alaska good-time-credit law, which is the most conclusive resource in statutory interpretation of former AS 33.20.010 (1960). At the time of statehood, Alaska adopted a statute that was virtually identical to the federal good-time-credit statute. There is no question that the federal statute employed a block method to award good-time-credit reductions of up to one-third of the total sentence. At that time the Alaska legislature was clear in stating its intent that "[t]he principle of good time for prisoners should be adopted into Alaska law as it is found in present federal laws dealing with Alaska." 1960 House Journal 194.

After having pointed out that Alaska prisoners, FBP prisons, and FBP administrators were transferred from the federal system to the state system, the state attempts to argue that "[g]iven the relative isolation of Alaska and the lack of sophistication of available avenues of communication in 1960, it is unlikely that the Alaska legislature was even aware that the new federal statute was intended to implement a block system of good time computation." Beyond the fact that there is no authority for this proposition, it does not logically follow from the historical facts set forth by the state. Thus, to the extent that this assumption is intended for use by the state as a linchpin for its argument that the legislature was not aware of the system of good-time credit it was adopting in 1960, it serves as no linchpin at all. The trial courts were correct in concluding that the 1960 Alaska legislature intended to follow federal good-time law and implement a block method of good-time computation.

AFFIRMED.

BRYNER, C.J., not participating.