Steven D. CALLAN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–05418.

Court of Appeals of Alaska.

Nov. 3, 1995.

Sharon Barr, Assistant Public Advocate, and Brant McGee, Public Advocate, Anchorage, for Appellant.

Marilyn J. Kamm, Assistant Attorney General, Department of Law, Criminal Division, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

**ORDER**

On consideration of the State's motion to publish this case as an opinion, filed on October 10, 1995,

IT IS ORDERED:

1. The motion is GRANTED.

2. Memorandum Opinion and Judgment No. 3258, issued on September 27, 1995, is WITHDRAWN.

3. Opinion No. 1445 is issued on this date in its place.

Entered at the direction of the Court.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

COATS, Judge.

In 1990, Steven D. Callan was convicted of theft in the second degree, a class C felony. A superior court judge sentenced Callan to serve a sentence of three years of imprisonment on the charge.[1] Callan served two years of this sentence and the state released him on mandatory parole under AS 33.20.010.[2] Callan had accumulated 365 days of good time which he was required to serve on mandatory parole.

On August 1, 1992, the state charged Callan with burglary in the second degree, a class C felony. Callan was arrested and imprisoned on this charge. Additionally, the parole board ordered Callan detained on his former theft conviction. The parole board ultimately revoked Callan's parole, requiring

1. Callan was also convicted of criminal trespass in the first degree, a class A misdemeanor, and was ordered to serve a concurrent sentence.

2. Alaska Statute 33.20.010 provides, in relevant part:
   [A] prisoner convicted of an offense against the state or a political subdivision of the state and

sentenced to a term of imprisonment that exceeds three days is entitled to a deduction of one-third of the term of imprisonment rounded off to the nearest day if the prisoner follows the rules of the correctional facility in which the prisoner is confined.

him to serve his 365 days of accumulated good time.

On January 4, 1993, Superior Court Judge Rene J. Gonzalez sentenced Callan to three years of imprisonment (presumptive) in the burglary case. Pursuant to AS 12.55.025(e), Callan's sentence on the burglary conviction was consecutive to his remaining sentence on his parole revocation in the theft case.[3]

Approximately one year later, Callan filed an application for post-conviction relief in which he contended that, at the time of his parole revocation, he had served his sentence for the theft conviction. Callan argued that he was entitled to a deduction for good time on this sentence.[4] He argued that since he had served his sentence for the theft conviction, the state was required to release him on mandatory parole in that case, pursuant to AS 33.20.040(a). According to Callan, he would then immediately begin to serve his time on the burglary conviction while simultaneously serving his mandatory parole time.

The state argued for a different procedure. First, the state added together Callan's sentence of 365 days for the parole violation on his former theft conviction and his three-year sentence on his burglary conviction. The state arrived at a total sentence of three years and 365 days. The state then computed Callan's good time based upon the total sentence.[5] Finally, the state calculated Callan's mandatory release date based on good time and his composite sentence. Under the state's calculations, the state will not release Callan on good time for his theft conviction until he has completed his entire composite sentence less good time. At that time, the

state will release him on the good time which he accumulated on the composite sentence.

■ Superior Court Judge Mark C. Rowland decided this issue in favor of the state, dismissing Callan's action for post-conviction relief. Since the issue which Callan raises is a question of law, not fact, this court exercises its independent judgment in interpreting the good time and mandatory release statutes. *Glidden v. State*, 842 P.2d 604, 606 (Alaska App.1992).

■ Alaska's good time and mandatory release statutes are based on former federal statutes. *Morton v. Hammond*, 604 P.2d 1, 2 (Alaska 1979); *see* former 18 U.S.C. §§ 4161–66; AS 33.20.030 & AS 33.20.040. Federal decisions interpreting the federal statutes support the state's method of calculating good time, which is based on calculating good time for the composite sentence for all of the prisoner's convictions. *See McCray v. United States Board of Parole*, 542 F.2d 558, 560 (10th Cir.1976); *Briest v. United States Bureau of Prisons*, 459 F.2d 284 (8th Cir.1972). In *McCray*, the court stated:

> There is no authority for the proposition that consecutive sentences "expire" independently of one another. The argument that consecutive sentences have separate mandatory release dates and that as each sentence reaches that date the next sentence begins has been made before and summarily rejected.

542 P.2d at 560 (citations omitted).

In addition to being supported by federal precedent, the state's system appears more logical than the system which Callan proposes. It seems simpler and more sensible to

---

**3.** Alaska Statute 12.55.025(e) provides, in relevant part:

> If the defendant is imprisoned upon a previous judgment of conviction for a crime, the judgment shall provide that the imprisonment commences at the expiration of the term imposed by the previous judgment.

**4.** Alaska Statute 33.20.040(a) states:

> Except as provided in (c) of this section, a prisoner released under AS 33.20.030 shall be released on mandatory parole to the custody and jurisdiction of the parole board under AS 33.16, until the expiration of the maximum term to which the prisoner was sentenced, if the term or terms of imprisonment are two years or more. However, a

prisoner released on mandatory parole may be discharged under AS 33.16.210 before the expiration of the term. A prisoner who was sentenced to a term or terms of imprisonment of less than two years shall be unconditionally discharged from mandatory parole. Alaska Statute 33.20.030 provides, in relevant part:

> A prisoner shall be released at the expiration of the term of sentence less the time deducted for good conduct.

**5.** The state represents that Callan has forfeited a total of 120 days of good time due to disciplinary actions. Callan apparently does not contest this.

calculate a prisoner's release on mandatory parole based upon his composite sentence rather than each individual sentence. Under the system proposed by Callan, it would be important to calculate which sentence the prisoner should serve first. Furthermore, a prisoner sentenced to serve four years based upon two consecutive two-year sentences would be treated differently than a prisoner sentenced to a single four-year sentence. We conclude that precedent and policy favor adoption of the state's interpretation of the good time and mandatory release statutes. Judge Rowland did not err when he dismissed Callan's application for post-conviction relief.

AFFIRMED.

MANNHEIMER, Judge, concurring.

I am writing to explain in more detail what this litigation is about and why I join in the court's decision.

In 1990, Callan was convicted of theft and sentenced to serve 3 years in prison. At the end of 2 years in prison, Callan had accumulated 1 year of good time credit under AS 33.20.010—an amount equal to the time remaining on his sentence. He was therefore released on parole. AS 33.20.030–040.

While on parole, Callan committed burglary, and he was sentenced to 3 years' imprisonment for this crime. Based on the burglary, the Parole Board revoked Callan's 1 year of good time credit from the earlier theft conviction. Thus, Callan was sent to prison to serve the 1 remaining year from his theft sentence and to serve a consecutive 3-year sentence for his burglary.

Approximately one year later, Callan filed an application for post-conviction relief. The relief Callan sought was in the nature of a declaratory judgement: an order directing the Department of Corrections to calculate his sentence and his parole date in a particular way.

The Department of Corrections calculated that Callan would spend 2 years and 8 months in prison, and then he would spend 1 year and 4 months on mandatory parole. The Department's calculation was based on the working assumption that Callan's two sentences should be treated as one composite term of 4 years' imprisonment. Because a prisoner accrues good time credit at the rate of 1 day for every 2 days of good behavior in prison, Callan would be entitled to release on mandatory parole after serving two-thirds of this 4-year composite term—or approximately 2 years, 8 months—and then Callan would spend the remaining 1 year, 4 months on mandatory parole.[1]

Callan argued that the Department's calculation was mistaken. He asserted that, because he had been sentenced to two separate, consecutive sentences, his time in prison should be credited first to one sentence, then to the other. Callan argued that he should be deemed to first be serving his 1 year of revoked good time credit from his theft conviction, then (at the end of that 1-year sentence) to be serving the 3-year sentence he received for the burglary. According to Callan's calculation, his first 8 months in jail satisfied the 1-year theft sentence (that is, he served 8 months and he earned 4 months of good time credit). At the end of those 8 months, Callan argued, he was entitled to immediate release on parole from the 1-year theft sentence. Callan further asserted that the Department of Corrections had no authority to defer this theft parole until the end of his burglary sentence. Thus, Callan argued, he must be deemed to have simultaneously served his 4 months of mandatory parole from the theft sentence at the same time he was serving the first 4 months of his burglary sentence.

The practical effect of this difference between the Department of Corrections' calculation and Callan's calculation lies in the date of Callan's ultimate release from state supervision. Under the Department's calculation, Callan would be released from state supervision 4 years after he entered prison. That is, Callan would serve 2 years, 8 months in prison and then spend 1 year, 4 months on mandatory parole. Under Callan's calcula-

---

1. It appears that, following his re-incarceration, Callan lost 120 days of this good time for infractions of prison rules. However, for purposes of deciding the issue in this appeal, this additional loss of good time is irrelevant.

tion, he would be released from mandatory parole 4 months earlier. According to Callan, his 4–month mandatory parole from the theft sentence was served during months 9 through 12 of his imprisonment (that is, simultaneously with the first 4 months of Callan's burglary sentence), so that he would have only 1 year of mandatory parole remaining (all attributable to his burglary sentence) when he was released from prison.

Superior Court Judge Mark C. Rowland decided this issue in favor of the State. Since the issue Callan raises is purely one of law, this court exercises its independent judgment when reviewing the superior court's interpretation of the statutes. *Glidden v. State,* 842 P.2d 604, 606 (Alaska App. 1992).

Alaska adopted its good time and mandatory parole statutes from former federal legislation. *Morton v. Hammond,* 604 P.2d 1 (Alaska 1979). The federal cases interpreting these federal statutes—former 18 U.S.C. §§ 4161–66—support the Department of Corrections' method of computation. That is, in analogous circumstances, federal courts have ruled that a prisoner's various consecutive sentences should be treated as one composite sentence when calculating the prisoner's good time credit and parole release date. *See McCray v. United States Board of Parole,* 542 F.2d 558, 560 (10th Cir.1976); *Briest v. United States Bureau of Prisons,* 459 F.2d 284 (8th Cir.1972).

Under the former federal statutes, a prisoner's rate of good time accrual depended on the length of the prisoner's sentence (prisoners with longer sentences earned good time credit at a faster rate). *See State v. McCallion,* 875 P.2d 93, 95 n. 3 (Alaska App.1994). It is therefore possible to explain these federal decisions as the product of the rule of lenity—the rule that ambiguous penal statutes should be interpreted in favor of defendants. However, in addition to being supported by federal precedent, the State's method of calculation appears more logical and fair. Under Callan's proposed calculation, a prisoner's final release date would be greatly, and arbitrarily, affected by the choice of which sentence he or she was deemed to be serving first.

Suppose a defendant was simultaneously sentenced to consecutive terms of 6 years and 3 years. Assuming that the defendant received a one-third reduction for good time credit against each sentence, the 6–year sentence from crime A would entail 4 years of actual imprisonment and 2 years of mandatory parole, while the 3–year sentence for crime B would entail 2 years of actual imprisonment and 1 year of mandatory parole.

Under the State's calculation, this defendant would serve 6 years in jail and then 3 years on parole, for a total of 9 years under state supervision. Using Callan's method of calculation, the defendant's total time under state supervision would vary, depending upon which sentence was considered "served" first.

If the prisoner were deemed to be serving the 3–year sentence for crime B first, then the prisoner's year of mandatory parole for that crime would be served simultaneously with his first year of imprisonment for crime A. Thus, the prisoner would spend a total of 6 years in jail (during which time he would satisfy his year of parole on crime B), and then he would spend 2 years on parole from crime A—a total of 8 years under state supervision. But if the prisoner were deemed to be serving the 6–year sentence for crime A first, then his 2 years of mandatory parole for that crime would be served simultaneously with his 2 years of actual imprisonment for crime B. Under this scenario, the prisoner would spend only 7 years under state supervision—6 years in jail and then only 1 year on parole from crime B.

The fact that Callan's method of calculation leads to such arbitrary and unfair results is a strong argument against it. *See Endell v. Johnson,* 738 P.2d 769 (Alaska App.1987) (rejecting a proposed interpretation of the statute granting credit for time served because the interpretation led to arbitrary and unfair differences in the amount of time defendants spent in prison). Moreover, it appears strained (at best) to suggest that AS 33.20 should be construed to place a prisoner

on "parole" at the same time that he or she is actually imprisoned and serving another sentence.

For these reasons, the superior court rightly rejected Callan's proposed method of calculation and his assertion that he was simultaneously paroled and imprisoned.